Bubke, J.
The sole issue on this appeal, by leave of this court, is whether an order granting defendant’s motion to dismiss the complaint on the ground that the action is barred by the Statute of Limitations was proper. We think it was.
*215 In 1944, when plaintiff was in a Naval hospital, a product called “ Umbrathor”, manufactured by defendant, was inserted into plaintiff’s sinuses for the purpose of making them perceptible in X rays. Some of the substance allegedly remained in plaintiff’s head and produced a carcinoma requiring the removal of an eye in 1957. This action was commenced in 1959. Plaintiff asserts three different bases of liability for the injury allegedly caused by defendant’s product. The substantive merits are not now before us and the sole question is the availability of the defense of the Statute of Limitations respecting each asserted basis of liability.
The second and third causes of action are essentially the same. The second alleges that defendant publicly advertised that Umbrathor was fit for use on humans and that it had been adequately tested and that these representations were false in that the tests were inadequate and the product was unsafe for human use. The third cause of action alleges that defendant warranted to the armed forces (presumably impliedly) that Umbrathor was merchantable and fit for human use. Where the warranty is as to suitability of the product sold, the limitation runs from the date of sale (Allen v. Todd, 6 Lans. 222 [1872]; Blessington v. McCrory Stores Corp., 305 N. Y. 140, 147; Liberty Mut. Ins. Co. v. Sheila Lynn, Inc., 185 Misc. 689, 692, affd. 270 App. Div. 835). In light of these decisions the courts below were correct in holding the warranty causes of action barred under subdivision 1 of section 48 of the Civil Practice Act as having been brought more than six years after the warranty was allegedly breached.
Plaintiff also alleges that defendant was negligent in that it should have known of the radioactive and carcinogenic properties of Umbrathor at the time it was marketed; and, further, that defendant was negligent in that it failed to warn the public and users of Umbrathor of its dangerous properties when it ‘1 knew or should have known ” of such dangers, and that such duty to warn was a continuing one. First, we do not think, on the facts of this case, that plaintiff can bring himself outside the bar of the statute on a theory of a duty to warn. In Conklin v. Draper (229 App. Div. 227, affd. 254 N. Y. 620) the plaintiff sought to avoid the bar of the Statute of Limitations for a malpractice action by alleging that, although more than two years had elapsed since defendant had left forceps in plaintiff’s abdomen, *216 defendant had a continuing duty to warn her of the presence of the forceps. In dismissing her cause of action for malpractice, the Appellate Division rejected plaintiff’s argument of a continuing duty to warn as unsound (229 App. Div. 227, 230). That this principle does not apply solely to malpractice actions is evident from this court’s treatment of the complaint in Schmidt v. Merchants Desp. Transp. Co. (270 N. Y. 287, infra), where attempts to avoid the bar of the Statute of Limitations for a negligence action, by alleging causes of action sounding in nuisance, breach of contract and fraudulent misrepresentation, were rejected. If the nature and origin of the liability asserted is a negligent act, the bar of the Statute of Limitations cannot be avoided through an allegation that defendant had a continuing duty to warn plaintiff of the possible damaging consequences resulting from the act alleged to be negligent. Any duty that may arise to recall the product from the market has no bearing on the rights of those to whom it had been administered years previously.
Turning to the basic negligence cause of action, it is apparent that the facts come within the holding of Schmidt v. Merchants Desp. Transp. Co. (270 N. Y. 287, supra). In Schmidt an action against a former employer to recover for pneumoconiosis, caused by inhalation of dust negligently allowed to accumulate in the air, was brought more than three years after the termination of the employment. The opinion of Judge Lehman recognizes the classic principle that “ 1 in actions of negligence damage is of the very gist and essence of the plaintiff’s cause.’ (Comstock v. Wilson, 257 N. Y. 231, 235.) ” The opinion goes on to say (p. 300): “ Through lack of care a person may set in motion forces which touch the person or property of another only after a long interval of time (Of. Ehret v. Village of Scarsdale, 269 N. Y. 198); and then only through new, fortuitous conditions. There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose.” All of the text writers and relevant cases so hold. Cooley makes the point as well as any. A cause of action accrues upon the violation of a legal right. In certain cases growing out of the action for trespass, the right is to be free from direct invasions of person or property. The wrong is done, the right *217 violated, and the canse of action complete when the invasion takes place, independently of any actual pecuniary damage. In such cases the right is not to be trespassed upon. Some rights, however, of lesser antiquity, growing out of actions on the case, are not rights against technical invasions, but rather rights not to be damaged under certain circumstances. In such cases the wrong itself is not actionable, the right not violated, and the cause of action nonexistent until damage takes place. (1 Cooley, Torts [4th ed.], § 46.)
None of these views point to a discovery rule. They would indicate, however, that the action accrues only when there is some actual deterioration of a plaintiff’s bodily structure. This is the reasoning of cases holding that the statute doesn’t begin to run until the defendant’s wrong harms the plaintiff. (Gile v. Sears, Roebuck & Co., 281 App. Div. 95 [defective floor caused injury one year later; statute held to run from date of injury]; White v. Schnoebelen, 91 N. H. 273 [1941], [statute held to run from date when lightning struck defectively installed lightning rod].) Since, then, the recognized damages in negligence cases are pain and suffering, loss of earnings and, we suppose, damage to the structure of the body, it is questionable whether any cause of action exists before these things actually happen. But Judge Lehman’s view in the Schmidt case is right as we must assume that the dust immediately acted upon Schmidt’s lung tissue.
Since many of our holdings that the cause of action accrues upon the introduction of the harmful substance into the body are malpractice cases, we should note that our accrual rule in such cases developed through special doctrinal pressures to which negligence cases as such have never been subjected. Originally actions for malpractice were premised on the breach of an implied contract to use the standard of care expected of a professional and the breach of that implied promise gave rise to the action for malpractice. Accordingly, the early decisions held, in accordance with the usual warranty rule, that the statute commenced to run from the time of its breach, i.e., when the act complained of took place. (Pike v. Honsinger, 155 N. Y. 201; Capucci v. Barone, 266 Mass. 578 [1929]; Conklin v. Draper, 229 App. Div. 227, 230, affd. 254 N. Y. 620, supra; Ranalli v. Breed, 277 N. Y. 630; Golia v. Health Ins. Plan of Greater N. Y., 7 N Y 2d 931.) Whether uncritical acceptance of a fading theory of *218 the basis of malpractice liability has led us astray in computing the time of accrual of the cause of action is of prime importance here. If we adhere to our accrual rule in malpractice cases, after recognizing that they are essentially negligence cases, we see no escape from the conclusion that we should follow Schmidt in a classic negligence case.
We should put aside the contention, often justifying abandonment of prior holdings, that social change or advancement in the sciences has so altered the subject matter upon which the law operates that a different result is called for. The insidious and 11 inherently unknowable ” nature of cancer and similar diseases was common knowledge in 1936 when Schmidt was decided. The affecting plea of a plaintiff who could not know he was being destroyed from within fell then upon ears no less sensitive to such appeals than those now hearing this case. To our minds, the adoption of and adherence to the accrual rule by the Judges of our court from 1930 onward renders the simple assertion “ it is unjust ” inadequate.
Considering the function of a Statute of Limitations as a device for repose, a potential defendant’s equities are the same whether the plaintiff knows of his condition or not. Repose is as beneficial to society in the one case as in the other. While the plaintiff’s equities are greater in one case, it was presumably pursuant to a determination that the interests of an occasional claimant were subordinate to society’s interest in repose that resulted in the Statute of Limitations in the first place. The existence of a discovery provision in the fraud statute bespeaks a legislative judgment that only in fraud cases, by their very nature, were there a sufficient number of unknown wrongs to justify a departure from the general rule. Apparently the rarity of such unfortunate cases in other types of actions did not outweigh the disadvantages of imposing a possible exception to the grant of repose to every person and industry who could be a potential defendant. It is hard to say for certain, but perhaps the possibility of feigned eases against unprepared defendants and the difficulties of proof in meritorious cases led to a decision that society is best served by complete repose after a certain" number of years even at the sacrifice of a few unfortunate cases.' Whatever the policy considerations, the recent amendment of the malpractice statute from two to three years (CPLR, § 214, *219 subd. 6) makes it clear that the legislative choice was deliberately made in the face of strenuously advocated alternatives. (See 1942 Report of N. Y. Law Rev. Comm., pp. 141-143, recommending a discovery provision with an outside limit of six years. A similar recommendation was made in 1962. See N. Y. Legis. Doc., 1962, No. 65[C].)
It is not without reason that change in this area has been thought by us to be the responsibility of the Legislature. Our court has no facilities to inquire into the incidence of hardship cases under the statute, nor the peculiarly legislative prerogative to balance the result of such an inquiry against the countervailing considerations of prudence and social tranquillity that are supposed to justify Statutes of Limitations. Moreover, how could we set limits to the right plaintiff would have us grant? Is it for a court to say that there shall be an outside limit of six years? If so, what of the fact that 15 years passed before plaintiff brought this action?
The judgment should be affirmed, without costs.