Fuchsberg, J.
(dissenting). The plaintiff in this wrongful death action appeals from an order of the Appellate Division that struck those portions of the orders of Special Term that had granted leave to the plaintiff to replead in strict liability and had affirmed so much of the orders as, inter alia, had dismissed causes premised on negligence. The case is still at the pleading stage. The defendants, maintaining that the case is time-barred, have successfully moved for summary judgment. They argued that the alleged injury to the decedent occurred at the time Thorotrast, the defendant Testagar’s trade name for the chemical compound thorium dioxide, was injected into her body at the defendant Roosevelt Hospital back in 1954. In opposition, the plaintiffs took the position that no injury was sustained at the time of the injection, which was consensual and uneventful when given, but rather that, by reason of the product’s latent properties, its attack on the decedent’s body did not occur until late 1972 or early 1973, dates that bring the commencement of suit well within the statute. Confining myself to the issue so defined, certainly at this stage of the case and pending exploration of the facts, I believe the motions should have been denied.
The pleadings are not complex. The complaint tells us that the Thorotrast was injected into Susan Thornton’s left maxillary region during a diagnostic examination for chronic sinusitis. It also alleges that, ostensibly a harmless substance intended merely to enhance the visualization of the sinus cavity on X-ray examination, to the knowledge of the defendants but unknown and undisclosed to her as the patient, it is a radioactive salt with a potential for causing cancer. The plaintiff further asserts that, though this foreign body ultimately caused the undifferentiated squamous cell carcinoma to which Mrs. Thornton succumbed, it did not produce its cancerous consequences before 1972, as confirmed not only by the absence of earlier tell-tale symptoms but by the negative results of other examinations during the intervening years.
Because the decisions below were posited entirely on the limitations question, there is no point here in delving into the medical literature, hospital records and argumentation with which the parties also punctuated their respective positions on *783 other underlying questions, such as whether the product— cost-utility considerations in mind — was safe; whether warnings were required; and whether warnings, if in fact given to ministering physician or to patient, were adequate. Instead, I proceed at once to the dispute over when the statute began to run.
I first observe that, while the court in effect has assumed that the choice is between the date when the Thorotrast was injected and the date when the cancer first developed, the latter date is not necessarily the same as the one on which the victim became aware of the injury. On this score, since the plaintiff pleads that the product was one whose deleterious activity could either occur belatedly or act slowly and insidiously over a long period of time, the accrual date could be one of three, i.e., (1) the date of ingestion, (2) the date when, regardless of whether Mrs. Thornton then became aware of it, the injury process first started to work on her body, and (3) the date when the injury manifested itself sufficiently to put her on notice that an injury had indeed occurred. The second and third alternatives would require a reversal of the order appealed from so that the proof as to when either of them took place could be developed.
Drugs with a latent or slowly evolving potential for harm are no longer unique. The bewilderingly broad spectrum of such products grows greater all the time. More and more, they compel their users to place blind reliance on the care with which they are designed, tested, fabricated, marketed and administered. Characteristically, the dangers they carry are hidden; as often as not, the earliest indication of harm may not turn up until a point remote in time, the adverse effect meanwhile being unknown and perhaps even nonexistent. Good sense and good law therefore require, it seems to me (and apparently to many courts),* that the injured user not be foreclosed from having his day in court before he even has *784 knowledge of any injury and certainly not before any injury has occurred.
Schmidt v Merchants Desp. Transp. Co. (270 NY 287) and Schwartz v Heyden Newport Chem. Corp. (12 NY2d 212), the cases upon which Special Term and the Appellate Division relied, are not insuperable obstacles. It is no impermissible slight to the rule of precedent to remember that, as with decisional law generally, what is Judge-made can be and, in appropriate cases, should be Judge-unmade. Stare decisis is a malleable rule, not one bound by bands of steel. As Roscoe Pound put it, "the law would break if it could not bend”. Indeed, in recent years, we have given recognition to the fact that the dynamic nature of personal injury law calls upon us to "readily re-examine established precedent to achieve the ends of justice in a more modern context” (People v Hobson, 39 NY2d 479, 489; see, e.g., Basso v Miller, 40 NY2d 233; Scurti v City of New York, 40 NY2d 433; Barker v Parnossa, Inc., 39 NY2d 926; Micallef v Miehle Co., 39 NY2d 376; see, also, People v Miller, 39 NY2d 543; Gelbman v Gelbman, 23 NY2d 434; Millington v Southeastern Elevator Co., 22 NY2d 498; Gallagher v St. Raymond’s R. C. Church, 21 NY2d 554; Battalla v State of New York, 10 NY2d 237; Bing v Thunig, 2 NY2d 656).
In fact, Schmidt and Schwartz carry their own seeds of obsolescence. So, in Schmidt, a 1939 case in which a plaintiffs inhalation of dust (unlike the present case, an uninvited trauma) eventually produced a disease of his lungs, the statute was held to run from the time the dust was ingested rather than when the injury came to the fore, despite the court’s pronouncement (p 300) that "There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury” (emphasis mine). How to reconcile that statement with the Schmidt result? By remembering that 40 years ago products liability law still hearkened back to a norm of immediacy of cause and effect rather than consciousness of the temporal gap between consumption and injury that the advent of more complex and sophisticated products has made the frequent order of the day. It is no surprise that, before the decade following Schmidt was over, the United States Supreme Court, in a similar factual context, had occasion to comment that " 'inasmuch as the injurious consequences of the exposure are the product of a period of *785 time rather than a point of time; consequently the afflicted employee can be held to be "injured” only when the accumulated effects of the deleterious substance manifest themselves’ ” (Urie v Thompson, 337 US 163, 170).
Our later decision in Schwartz did little to rebut Urie’s self-evident statement; a case close to the present one on its facts, it adhered to Schmidt slavishly. Doing so, it bucked the trend of products law across the country. It also drew a strong dissent from Chief Judge Desmond and Judge (later Chief Judge) Fuld, in which they minced no words in pointing out that "it would be unreasonable and perhaps unconstitutional to hold that [the] time to sue expired before it was possible for [the plaintiff] to learn of the wrong” (Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, 219, supra [dissenting opn]). It is now more than high time we overrule these cases (see McLaughlin, Practice Commentaries, McKinney’s Cons Laws of New York, Book 7B, CPLR 203, p 111, 203:1).
The policy to be applied is akin to the powerful one governing infants’ cases. We all recognize that it is wrong for a child too immature or too unaware of his or her right to act to be barred on that account. The adult victim of a drug whose injurious effect, like that of a time bomb, is either delayed or unknowable, is clearly as helpless to act as an infant. To the extent that there very well may be some awareness in the case of the infant, but none in the case of an adult in circumstances like those now before us, there may be even more reason for the law to extend its protection to the adult.
Finally, with due regard for separation of powers, this is hardly an appropriate matter on which to await legislative action. That a right to recover should run from the time it is discoverable is a matter of fundamental justice. It is an abdication of our own role in the scheme of government to defer to the Legislature for rescue from an unconscionable decisional law.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur in memorandum; Judge Fuchsberg dissents and votes to reverse in a separate opinion.
Order affirmed.

 (Goodman v Meade Johnson & Co., 534 F2d 566; Karjala v Johns-Manville Prods. Corp., 523 F2d 155; Roman v Robbins Co., 518 F2d 970; Borel v Fireboard Paper Prods. Corp., 493 F2d 1076; Thrift v Tenneco Chem., 381 F Supp 543; Raymond v Lilly & Co., 117 NH 164; Gilbert v Jones, 523 SW2d 211 [Tenn]; see Reynolds Tobacco Co. v Hudson, 314 F2d 776, 785; Brush Beryllium Co. v Meckley, 284 F2d 797, 798-800; Ricciuti v Voltarc Tubes, 277 F2d 809, 813; Sylvania Elec. Prods. v Barker, 228 F2d 842, 847-848; Chrischilles v Griswold, 260 Iowa 453; Phillips, An Analysis of Proposed Reform of Products Liability Statutes of Limitations, 56 NC L Rev 663, 664; Products Liability-Accrual and Limitations of Actions, 35 Tenn L Rev 335, 340; Developments in the Law-Statutes of Limitations, 63 Harv L Rev 1177, 1204-1205.)