Phyllis ROCKWELL and Donald Rockwell, Plaintiffs,

v.

ORTHO PHARMACEUTICAL CO., Defendant.

No. 80–CV–272.

United States District Court, N. D. New York.

April 1, 1981.

---

Jacobs & Jacobs, Stamford, N. Y., for plaintiffs.

Patterson, Belknap, Webb & Tyler, New York City, Coupe, Abend & Connors, Utica, N. Y., for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This is a products liability suit brought against the manufacturer of an intrauterine device called Lippes Loop which was intended for use as a means of contraception. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. There is now before this Court defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Fed.R.Civ.P., on the ground

that the causes of action are barred by the applicable New York statutes of limitations.

The plaintiffs served a summons in New York Supreme Court, Delaware County, on the defendant Ortho Pharmaceutical Co., on March 3, 1980. Defendant then removed this action to the Northern District of New York pursuant to 28 U.S.C. § 1441 on March 31, 1980. On April 13, 1980, the plaintiff served the defendant with a verified complaint.

## BACKGROUND

This is an action to recover money damages for personal injuries allegedly sustained by the plaintiff, Phyllis Rockwell, as a result of the insertion of a Lippes Loop manufactured by the defendant Ortho Pharmaceutical Co. Mrs. Rockwell consented to the insertion of this device in 1972, on the advice of her gynecologist, who she believes relied on the representations of the defendant that the device was a safe method of contraception. In September of 1975, Mrs. Rockwell alleges she suffered abdominal pain and bleeding which caused her to seek medical attention. Plaintiff claims that the device could not be found, but after x-rays the Loop was located and removed. A PAP test taken at the time indicated possible cancer, and a subsequent biopsy confirmed this diagnosis. The Rockwell's claim that this cancer was caused by the Lippes Loop. In October of 1975 Mrs. Rockwell underwent a hysterectomy.

There are ten separate causes of action alleged in this complaint; five are on behalf of Phyllis Rockwell and five are derivative causes of action on behalf of Donald Rockwell.[1] Mrs. Rockwell's first cause of action alleges negligence and/or intentional tort. As elements of this cause of action, plaintiffs claim that Ortho knew or should have known that the product was unsafe in that adequate testing was not done on the product before it was marketed. In addition, plaintiffs contend that once the product was introduced, the defendant planned and

schemed to publish and distribute false information thus preventing Mrs. Rockwell from learning of the danger.

Mrs. Rockwell's second cause of action in fraud alleges that the defendant made willful misrepresentations and failed to inform the public that the Loop was dangerous. The plaintiff alleges that Ortho made these statements in brochures, news releases to the media, and in statements to investigating administrative agencies concerned with the safety of the Lippes Loop. The plaintiff claims that she relied on these statements to her detriment, alleging that if she had been aware of the fraudulent statements she would not have consented to the insertion of the Loop or allowed the Loop to remain in place for so long. Also, Mrs. Rockwell contends that had she been aware of the fact that the device was dangerous she would have asserted her claims against Ortho immediately.

The third cause of action is in warranty. Plaintiffs allege that the defendant breached express and implied warranties of merchantability and fitness; that plaintiff was prevented from discovering these breaches on account of Ortho's fraudulent representations as to the safety of the product; and that Ortho failed to apprise the plaintiff and the public of the specific dangers of the Lippes Loop.

Mrs. Rockwell's fourth cause of action sounds in civil conspiracy. She alleges that the defendant engaged in a scheme or plot to falsify test results, and to knowingly manufacture and market an unsafe device to defraud the public and medical professionals. Also, Mrs. Rockwell contends that defendant combined with other unknown persons to withhold and conceal information from the public and thereby frustrate, prejudice and impede the remedies of the public and the plaintiffs.

The fifth cause of action is in strict products liability. The plaintiffs allege that the Loop was defective in manufacture and design. Further, Mrs. Rockwell contends that

---

1. In paragraph "73" of the complaint the plaintiffs assert that as a result of the injuries sustained, Phyllis Rockwell has suffered the loss of

consortium of Phyllis Rockwell. This is obviously a typographical error on the part of the plaintiffs.

the manufacturer failed to warn her of the dangers. Five identical causes of action are interposed on behalf of Donald Rockwell, Mrs. Rockwell's husband, for medical and other expenses incurred, loss of consortium and deprivation of his right to father children.

## DISCUSSION

■ New York courts look to the essence or gravamen of the complaint in determining the appropriate statute of limitations applicable to a cause of action. *State v. Cortelle Corporation*, 38 N.Y.2d 83, 378 N.Y. S.2d 654, 341 N.E.2d 223 (1975); *Brick v. Cohn Marx-Hall Co.*, 276 N.Y. 259, 11 N.E.2d 902 (1937); *Kartiganer Associates, P. C. v. Town of Newberg*, 57 A.D.2d 857, 394 N.Y.S.2d 262 (2d Dep't 1977).

The essence of the plaintiffs' case is that the defendant manufacturer placed a defective product on the market which caused the plaintiff personal injury. In *Victorson v. Bock Laundry*, 37 N.Y.2d 395, 400, 373 N.Y.S.2d 39, 41, 335 N.E.2d 275, 277 (1975), the New York Court of Appeals noted that, depending on the particular factual circumstances on which the claim arises, there are four theories under which a manufacturer of a defective product may be held liable. They are negligence, breach of express warranty, breach of implied warranty and strict products liability. The proper statutes of limitations for the causes of action, including those labeled fraud and conspiracy, are those for negligence, strict products liability and warranty. All of these causes of action are pleaded by the Rockwells.

The New York Statute of limitation for negligence and strict products liability is governed by the three-year statute contained in N.Y. CPLR ¶ 214(5) (McKinney Supp.1980). This statute begins to run from the time the wrong is committed even though the injured party is unaware of the injury for a period of time. *Schwartz v. Heyden Newport Chemical Corp.*, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, *amended*, 12 N.Y.2d 1073, 239 N.Y.S.2d 896, 190 N.E.2d 253, *cert. denied*, 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032 (1963).

There are certain exceptions to this rule, such as the "foreign object" rule for malpractice actions which holds that accrual of the statute begins one year after the discovery of the object or one year after the claimant is aware of the facts that would reasonably lead to such a discovery. N.Y. CPLR § 214–a (McKinney Supp.1980).

Breach of warranty claims are governed by the Uniform Commercial Code. *Reis v. Pfizer*, 61 A.D.2d 777, 402 N.Y.S.2d 401 (1st Dep't 1978), *aff'd.*, 48 N.Y.2d 664, 421 N.Y. S.2d 879, 397 N.E.2d 390 (1979); *Victorson v. Bock Laundry, supra; Fazio v. Ford Motor Co.*, 69 A.D.2d 896, 415 N.Y.S.2d 889 (1st Dep't 1979). The limitation period contained in the code is four years from the date of the breach. The breach occurs when delivery of a defective product is completed regardless of the aggrieved party's lack of knowledge of the breach unless the warranty is explicitly extended to future performance at which time the cause of action accrues when the breach is, or should have been, discovered. N.Y. UCC § 2–725 (McKinney 1964).

■ In the present case the action was commenced in March 1980; Mrs. Rockwell consented to the insertion of the IUD in 1972 and subsequently discovered the extent of her injuries in October 1975. The latest possible accrual date for the running of the statute of limitations under both negligence and strict products liability theories is October 1975. Even if that date is used, the negligence and strict products liability actions are time-barred because the action was commenced approximately four and one half years from October 1975. Likewise, even if the warranty claim is dated from the time the plaintiffs discovered Mrs. Rockwell's injuries, the action would normally be time-barred since the suit was commenced approximately five months after the statute bars the cause of action.

Plaintiffs advance two theories under which they assert that their causes of action are not time-barred. First, plaintiffs claim that the doctrine of equitable estoppel prevents the defendant from asserting a stat-

ute of limitations defense since, because of Ortho's intentionally fraudulent conduct, the plaintiffs were not aware of facts sufficient to form a belief that their damages had been caused by the Lippes Loop until about January 1980.[2]

Secondly, plaintiffs assert that with respect to the plaintiffs' cause of action in breach of warranty, the intrauterine device is a "foreign object" within the meaning of N.Y. CPLR § 214–a. Plaintiffs allege that in the case of a "foreign object" the statute began to run in January 1980 when the plaintiffs discovered that Mrs. Rockwell's injuries were caused by the Lippes Loop.

## EQUITABLE ESTOPPEL CLAIM

New York courts have held that a defendant may be estopped to plead the statute of limitations where the plaintiff was induced by fraudulent misrepresentations or deceptions on the part of the defendant to refrain from filing a timely action. *Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978); *General Stencils v. Chiappa*, 18 N.Y.2d 125, 272 N.Y.S.2d 337, 219 N.E.2d 169 (1966); *Erbe v. Lincoln Trust Co.*, 13 A.D.2d 211, 214 N.Y.S.2d 849, *mot. for rearg. and mot. for leave to app. denied*, 14 A.D.2d 509, 217 N.Y.S.2d 576 (4th Dep't 1961) *app. dsmd.*, 11 N.Y.2d 754, 226 N.Y.S.2d 692, 181 N.E.2d 629 (1962).

■ There are two theories under which the doctrine of equitable estoppel may be invoked. The plaintiffs urge that both theories apply to their case. First, the plaintiffs claim that Ortho fraudulently concealed the facts which prevented them from bringing a timely cause of action. Under the concealment theory a plaintiff must show that there was a fiduciary relationship between the parties that obligated the defendant to inform the plaintiff of the facts which would give rise to a cause of action. *General Stencils v. Chiappa, supra* (head bookkeeper converts sums out of petty cash fund); *Erbe v. Lincoln Trust Co., supra* (trustee breaches fiduciary duty by purchasing stock from an estate).

■ Here, the Rockwells allege that Ortho should be estopped from asserting a statute of limitations defense because the company did not apprise the plaintiffs of the possible dangers associated with the Lippes Loop. Yet, there is no allegation in the complaint that Ortho had a fiduciary relationship with the Rockwells that gave rise to a duty to inform them that they had a cause of action against the company. Indeed, if such a relationship were alleged by the plaintiffs, it would most likely be rejected by the New York courts. *Jordan v. Ford Motor Company*, 73 A.D.2d 422, 426 N.Y. S.2d 359 (4th Dep't 1980). In *Jordan*, an automobile manufacturer was held not to have a fiduciary relationship with the plaintiff which would give rise to a duty to inform her that she had a cause of action against the company because of a defect in her automobile that allegedly caused a serious accident years before. The Court stated:

> Where an injured party is simply unaware that a cause of action is available to him, either due to lack of diligence on his own part or because of the difficulty of discovering the injury, the courts have not applied the doctrine of equitable estoppel (see *Schwartz v. Heyden Newport Chem. Corp.*, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142; *Schmidt v. Merchants Dispatch Transportation Co.*, 270 N.Y. 287, 200 N.E. 824).[3]

73 A.D.2d at 424, 426 N.Y.S.2d at 361.

Therefore, this Court holds that the Rockwells cannot invoke the equitable estoppel

---

**2.** This January 1980 date is mentioned nowhere in the plaintiffs' complaint. The first indication that this is the date that plaintiffs allege that they discovered the causal connection between the Lippes Loop and the plaintiff Phyllis Rockwell's cancer is found in the plaintiffs' Memorandum of Law in opposition to the motion for summary judgment (4). No supporting facts are given as to the reason for such a late discovery of the source of plaintiff's injuries,

except the argument that the plaintiffs continued to rely on Ortho's representations that their product was safe.

**3.** In *Schwartz* the New York Court of Appeals held that a plaintiff could not invoke the doctrine of equitable estoppel where in 1944 he had received an injection, which 13 years later caused a carcinoma.

doctrine on the theory of fraudulent concealment.

Plaintiffs also allege that Ortho should be estopped from invoking the statute of limitations because the company made affirmative misrepresentations to the media and in testimony before various administrative agencies attesting to the safety of their product which Ortho knew, or should have known, were false when made. These statements were issued, according to plaintiffs, to mislead the public, especially the medical profession and in turn these misrepresentations misled the plaintiffs.

The requirements for successfully asserting this theory of estoppel based on affirmative misrepresentation are contained in a major case in the area of equitable estoppel of the statute of limitations. *Simcuski v. Saeli, supra,* a case cited frequently in the plaintiffs' Memorandum of Law (4, 5, 7). That Court held that in order for the plaintiff to prevail on this theory the plaintiff must *necessarily establish* in her complaint that there was *justifiable reliance* on the alleged misrepresentations of the defendant. 44 N.Y.2d at 449, 406 N.Y.S.2d at 262, 377 N.E.2d at 716. *See also* Plaintiff's Diligence as Affecting His Right to Have Defendant Estopped From Asserting the Statute of Limitations, 44 A.L.R.3d 760 §§ 4, 7 (1970).

It is difficult to find justifiable reliance in the complaint before this Court. Mrs. Rockwell has admitted in the complaint and in the Memorandum of Law in opposition to this motion for summary judgment that she had experienced pain and abdominal bleeding traceable to the device in October of 1975. It was even necessary to take x-rays to locate the device. Continued reliance on a product's affirmative advertising after personal negative experience is difficult to classify as justified. Further, the plaintiffs have made no attempt to explain their reliance in the face of the 1975 experience either in the pleadings or in additional affidavits in opposition to this motion.

It has been held that a plaintiff must establish that he pursued his claim with due diligence after discovering that he had a cause of action against a defendant who had made affirmative misrepresentations or who as a fiduciary had concealed facts concerning a cause of action. *Simcuski v. Saeli, supra,* 44 N.Y.2d at 449, 262 N.Y.S.2d at 262–63, 377 N.E.2d at 717–18.

Here, the plaintiffs have not asserted when or how they discovered the source of Mrs. Rockwell's injuries in their complaint. Their Memorandum of Law in opposition to this motion mentions a date, January 1980, (see note 2 of this opinion), but there is no further mention of any additional facts to support this proposition or to illustrate that the plaintiffs pursued their claim diligently. The New York courts have made it clear that the burden of establishing due diligence is *squarely* on the plaintiff. *Simcuski v. Saeli, supra; Immediate v. St. Johns Queens Hosp.,* 48 N.Y.2d 671, 421 N.Y.S.2d 875, 397 N.E.2d 385 (1980).

New York courts have also held that the facts presented to support claims of equitable estoppel in a plaintiff's pleadings and affidavits must be evidentiary facts. Mere assertions are not sufficient. *Florio v. Cook,* 48 N.Y.2d 792, 423 N.Y.S.2d 917, 399 N.E.2d 947 (1980); *Immediate v. St. Johns Queens Hosp., supra; Renda v. Frazer,* 75 A.D.2d 490, 429 N.Y.S.2d 944 (4th Dep't 1980). *See generally,* Farrell, Civil Practice, 1978 Survey of New York Law, 30 Syr.L.Rev. 386, 406–09. While the plaintiffs' complaint does allege fraud with some specificity, the plaintiffs have not established by evidentiary facts that they justifiably relied on defendant's misrepresentations or that they pursued their claim with due diligence. The claim that Ortho is estopped to assert the statute of limitations because of the company's affirmative misrepresentations fails.

The plaintiffs have brought a recent New York Supreme Court case to this Court's attention. *Bulka v. A. H. Robbins Co., Inc.,* Slip Op., Albany Co., Special Term, April 10, 1980. In that case plaintiff sued the manufacturer of an allegedly defective in-

trauterine device on the precise causes of action under which the Rockwells are suing the defendant in this case. This Court notes, however, that the pleadings and affidavits in that case have not been made available to this Court and, therefore, a judgment as to the sufficiency of the facts pleaded in that case cannot be made. This Court does note, however, that the evidentiary fact requirement as enunciated in *Florio, Immediate* and *Renda* is not mentioned in *Bulka*. This Court feels in no way bound by the *Bulka* decision, but rather is relying on the New York Court of Appeals and Appellate Division pronouncements in the three cases mentioned above.[4]

## FOREIGN OBJECT CLAIM

The plaintiffs urge this Court to deem the intrauterine device a foreign object under N.Y. CPLR § 214–a (McKinney Supp. 1980). According to that section where an action is based on the discovery of a foreign object a plaintiff may bring the action within one year of the discovery of the object or one year from the date of the discovery of facts which would lead to the discovery of the object, whichever is earlier. The plaintiffs contend that the statute did not commence to run until they had traced the source of Mrs. Rockwell's injury to the Lippes Loop.

Even if this Court were to accept the plaintiffs' theory that an object placed voluntarily into the body can be considered a foreign object for purposes of this statute, there are other grounds under which this Court must reject the extension of the foreign object doctrine in this case.

First, the heading of N.Y. CPLR § 214–a states that the section applies to "(a)ctions for *medical malpractice* to be commenced within two years, six months; exceptions." (emphasis added). In 1975, the New York legislature limited the section to specifically exclude chemical compounds, fixation devices or prosthetic aids after some New York courts had extended the doctrine. *Dobbins v. Clifford*, 39 A.D.2d 1, 330 N.Y.S.2d 743 (4th Dep't 1972); *LeVine v. Isoserve, Inc.*, 70 Misc.2d 747, 334 N.Y.S.2d 796 (Sup.Ct.Sp.T., Albany Co. 1972).

Secondly, in cases subsequent to that amendment, the New York Court of Appeals has held that the section is limited to malpractice actions. In *Beary v. City of Rye*, 44 N.Y.2d 398, 406 N.Y.S.2d 9, 377 N.E.2d 453 (1978), the court stated that the foreign object exception should not be extended beyond the narrow scope of malpractice actions with facts similar to those in *Flanagan v. Mt. Eden General Hospital*, 24 N.Y.2d 427, 430, 301 N.Y.S.2d 23, 26, 248 N.E.2d 871, 872 (1969), where that plaintiff was injured when a doctor negligently failed to remove clamps from the patient's body after surgery. The Court of Appeals also rejected an extension of this doctrine in *Thornton v. Roosevelt Hospital*, 47 N.Y.2d 780, 417 N.Y.S.2d 920, 391 N.E.2d 1002. In *Reis v. Pfizer*, 61 A.D.2d 777, 402 N.Y.S.2d 401 (1st Dep't 1978), *aff'd.*, 48 N.Y.2d 664, 421 N.Y.S.2d 879, 397 N.E.2d 390 (1979) the Court rejected an extension of the statute of limitations where plaintiff became aware

---

4. At this point the Court should address the fact that the plaintiffs have labeled their first claim as negligence and/or intentional tort, and their second claim as fraud. The *Simcuski* case does mention that a plaintiff may have a cause of action labeled intentional tort in fraud. The elements of that cause of action are:

(1) defendant knew or had reason to know of the fact of his malpractice,

(2) knowing it to be false at the time, defendant thereafter made material, factual misrepresentations as to the subject matter of his malpractice, and

(3) plaintiff's condition could have been corrected or alleviated if the misrepresentations were not made.

Even if this Court reads this aspect of that case out of the narrow field of malpractice, the Rockwells have still failed to meet the burden imposed by *Simcuski*. *Simcuski* specifically held that the elements of such cause of action must be based on evidentiary proof in admissible form where a motion to dismiss is made by the defendant. 44 N.Y.2d at 453, 262 N.Y.S.2d at 265, 377 N.E.2d at 719. Here, though the plaintiffs have relied on this case and quoted from it extensively, they fail to present any evidentiary proof by affidavit or otherwise to satisfy this requirement.

of the cause of his injuries by reading a magazine article connecting vaccine with the disease he contracted six years after his injury. The Court held that foreign object cases are to be read narrowly to include the kind of malpractice found in *Flanagan* and are not to be used in warranty or strict products liability cases.

Finally, the statute itself refers to the term "discovery" as discovery of the object itself, not discovery of the causal connection between the object and the injury. The statute of limitations begins to run again after the *discovery of the object.* The latest date here that can be used for the discovery of the IUD is October of 1975, the date of removal. Again, the statute has run since the plaintiffs brought their cause of action more than a year after the discovery of the object.

The plaintiffs in this case have cited *Darragh v. Nassau County,* 91 Misc.2d 53, 397 N.Y.S.2d 553 (Sup.Ct., Nassau Co.1977), a New York Supreme Court case that held that an IUD was a foreign object. There, however, the action was based on medical malpractice. The doctor was accused of negligently leaving one IUD in the plaintiff's body after the insertion of a second IUD. The Court held that the facts in that action patterned *Flanagan v. Mt. Eden General Hosp., supra,* in that negligently leaving an IUD in the body is like leaving a clamp in the body. The Court held that the cause of action did not accrue until the first IUD was discovered or reasonably could have been discovered by that plaintiff.

*Darragh* does not apply to the present case in that this is a negligence, strict products and warranty case and not a malpractice action. In addition, the facts in this case do not parallel that of *Flanagan.* Here, the IUD was not negligently left in the patient's body without her knowledge as was the clamp in the *Flanagan* case.

Therefore, the Court rejects the extension of the foreign object doctrine to the facts of this case.

ACCORDINGLY, it is hereby

ORDERED, that this complaint be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the causes of action are barred by the statute of limitations.