Fuchsberg, J.
(dissenting). The orders appealed from in these cases should be reversed and the motions for summary judgment denied.
Once again we are confronted with a determination that plaintiffs who, alleging tortious wrongdoing as a result of which they were injured, are held to have been barred by the Statute of Limitations before they learned or could have learned that they had sustained the injuries of which they complain.
Though to state this proposition would appear to be to refute it, the majority, under what it takes to be the restraint of three cases, Schmidt v Merchants Desp. Transp. Co. (270 NY 287), Schwartz v Heyden Newport Chem. Corp. (12 NY2d 212) and, most recently, Thornton v Roosevelt Hosp. (47 NY2d 780), a decision in which I filed a dissent, in effect upholds it.
In my view, the cases cited are too confusing and contradictory to support such a result. For example, in Schmidt, though the court held that dust which produced a disease of the lungs set off the running of the statute when it was ingested rather than when the injury came to the fore, the court, inexplicably, also proclaimed (at p 300) that “There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury” (emphasis added). Further, in the relatively short time which has elapsed since Thornton was decided, the Legislature already has issued policy pronouncements that cut across the legal philosophy they bespoke.* In such circum *1012 stances, the vitality of Judge-made law depends in no small measure upon a readiness to have the judiciary, and not the Legislature, as Thornton and the majority memorandum in this case suggest, make its own corrections.
The underlying principle is hornbook law. As Dean Prosser put it, “the statute of limitations does not begin to run against a negligence action until some damage has occurred” (Prosser, Law of Torts [4th ed], p 144). Or, as was acknowledged with apparent reluctance in Schwartz, “Since, then, the recognized damages in negligence cases are pain and suffering, loss of earnings and, we suppose, damage to the structure of the body, it is questionable whether any cause of action exists before these things actually happen” (Schwartz, swpra, at p 217).
In this court, contrary rulings have troubled its Judges, and, ultimately, have been repudiated by the court as a whole. So, in Schwartz, itself, a strong dissent by Chief Judge Desmond and Judge (later Chief) Judge Fuld left no room for misunderstanding when it warned that “it would be unreasonable and perhaps unconstitutional to hold that his time to sue expired before it was possible for him to learn of the wrong” (Schwartz, supra, at p 219). And, the clarion clear comment that “it is all but unthinkable that a person should be time-barred from prosecuting a cause of action before he ever had one”, first made by Judge (later Chief Judge) Breitel in dissent in Mendel v Pittsburgh Plate Glass Co. (25 NY2d 340, 346), was later to be adopted by the whole court in Victorson v Bock Laundry Mach. Co. (37 NY2d 395, 401).
Guided by these beacons, I now turn to the opposing positions on which summary judgment turned. The defendants’ needs no elaboration; it is simply that the actions arose when each of the plaintiffs breathed the asbestos-laden air, that is, at the time of exposure. If this contention is credited, of course, the wrongful conduct and ensuing dam *1013 ages for all practical purposes would have been simultaneous. But the plaintiffs do not agree; they insist that the scientific facts are at odds with this unified concept. Pointing to medical authority, they contend that, while the unwanted invasions of their lungs by environmental air which had been contaminated by asbestos dust are the wrongful acts to which they were subjected, the damages they sustained were in the form of diseases which did not come about until much later. From this exposition, the diseases, asbestosis and mesothalioma, the latter a cancer of the mesothelial cells which surround the organs of the chest cavity, are said to be consequential, as distinguished from immediate, in their temporal character (see, also, Urie v Thompson, 337 US 163,170 [“consequences of the exposure are the product of a period of time rather than a point of time”]).
The plaintiffs go on to assert that the properties of particles of asbestos are such that their inhalation will not necessarily result in the contraction of the disease; that, unlike chemical compounds, the particles do not break down into reactive elements when lodged in the body; that those who are exposed may never sustain any injury at all; that, even if a cancerous tumor later forms, it will not have begun to do so at the time of exposure; that, before such an event will occur, the asbestos may lay dormant for years; and that the future time when it may develop is unpredictable.
In this apposition the Statute of Limitations question is not one presenting a choice, as the majority would have it, between the times of inhalations and the times of discovery of the subsequent disease. Were that so, absent a discovery rule, the defendants’ motions would indeed have had to have been granted. But, since the issue of fact fleshed out by the motions instead left it a case of dates of inhalation versus dates when the damaging disease came into existence, the question was one for triers of fact.
It follows that the orders of the Appellate Division must be reversed and the cases remitted for trial on the merits.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, and Wachtler concur in memorandum; Judge Meyer con *1014 curs on constraint of Thornton v Roosevelt Hosp. (47 NY2d 780); Judge Fuchsberg dissents and votes to reverse in an opinion.
Order affirmed.