**Helen Porter SIMON, Plaintiff,**

v.

**A. H. ROBINS CO., INC. and Paul Packer, Defendants.**

No. 79 Civ. 1481–CLB.

United States District Court, S. D. New York.

Dec. 4, 1981.

Fuchsberg & Fuchsberg, New York City, for plaintiff; Lawrence Singer and Annie Kaplan, New York City, of counsel.

Gair, Gair & Conason, New York City, for Robins; Herman Schmertz and Ronald Berson, New York City, of counsel.

Morris, Duffy, Ivone & Jensen, New York City, for Packer; Lois Freedman, New York City, of counsel.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

In this diversity products liability and medical malpractice case, defendants A. H. Robins Co., Inc. and Paul Packer, M.D., each moved separately for summary judgment dismissing the complaint as time barred. The motions were heard and fully submitted on May 13, 1981.

The facts bearing on the issue of the statute of limitations are not in dispute. For the reasons set forth below, the Court concludes that the motions should be granted.

Defendant Robins is the manufacturer of a contraceptive device marketed nationally and known as the Dalkon Shield. This litigation is one of a number in the state and federal courts seeking damages for infection resulting from a defect in the design or manufacture of the device itself, or in the principle upon which it operates, which con-

templates the permanent insertion of a foreign body within the uterus. Defendant Packer is the physician who allegedly prescribed and inserted the device.

Some 500 similar actions against Robins have been administered under the direction of Hon. Frank G. Theis, United States District Judge, District of Kansas, for purposes of consolidated or coordinated pre-trial discovery, pursuant to orders of the Judicial Panel on Multidistrict Litigation, under that Panel's Docket No. 211, as *In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation.* This action was so assigned and transferred to the District of Kansas by the Panel effective May 14, 1979. Following completion of that portion of the pre-trial discovery applicable to all cases, this action was re-transferred to this district effective May 12, 1980. The case was substantially ready for trial when the motions were made.

The Dalkon Shield intrauterine device was inserted in plaintiff's body on June 29, 1973. This action was commenced against the defendant A. H. Robins Co., Inc. on March 27, 1979, and against defendant Dr. Packer on or about March 30, 1979.

Plaintiff contends and the Court assumes for purposes of this motion, that the device remained continuously in plaintiff's body, without apparent difficulty, from June 29, 1973 until "late 1976" (¶ 5, Affidavit of Helen Porter Simon, filed June 24, 1981). Plaintiff also asserts without contradiction that she experienced symptoms in late 1976, and therefore consulted a Florida physician in April 1977. It was then for the first time that she was advised that she had a "pelvic infection," and the defendant Robins' device was removed. Plaintiff suffered pain and endured permanent impairment and severe damages as a result of the "infection" first observed in "late 1976," for which she underwent major surgery in Florida on November 1, 1977.

On March 3, 1981 the parties conceded in open Court, as they must, that New York law controls the issues in this case. The Court deferred resolution of these motions because the Court then perceived some difficulty or uncertainty in the law of New York, and believed that a lapse of time would permit resolution of these motions as a result of cases involving similar facts being litigated in the New York courts. Because of an intervening determination by the New York Court of Appeals in *Steinhardt v. Johns-Manville Corporation,* 54 N.Y.2d 547, 446 N.Y.S.2d 244, 430 N.E.2d 1297 (1981), this Court now regards the law of New York as clarified on the point.

Section 214, New York C.P.L.R. provides for a statute of limitations to recover damages for personal injuries of three years. As to causes of action for medical malpractice based upon acts of malpractice occurring on or after July 1, 1975, § 214–a of the New York C.P.L.R. provides for a two and one-half year statute of limitations. The cause of action accrues at the time of the alleged wrongful act, unless the case comes within one of the exceptions thereto carved out by New York caselaw.

Even prior to *Steinhardt* there was a preponderance of authority to the effect that a medical malpractice or product liability claim arising out of the intentional placement within the body of a hazardous or defective product or article, accrued on the date of the insertion. The leading New York case in point is *Schwartz v. Heyden Newport Chemical Corp.,* 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142 (1963). In that case a hazardous radioactive dye was intentionally injected into a body cavity of the plaintiff for purposes of diagnosis by X-ray. Residues of that dye later caused cancer. The carcinogenic effect of the radioactive dye was apparently not perceived at the time the product was marketed, although it was foreseeable. Although the cancer did not become apparent until long afterwards, the New York Court of Appeals, reviewing its own prior caselaw on the subject, held that the statute of limitations began to run on the date of injection of the defective product.

Later, in *Thornton v. Roosevelt Hospital,* 47 N.Y.2d 780, 417 N.Y.S.2d 920, 391 N.E.2d 1002 (1979), the New York Court of Appeals considered a similar claim, arising out of

facts indistinguishable from those in *Schwartz, supra.* The Court held (Fuchsberg, J. dissenting):

"[T]he cause of action accrued at the time of invasion of decedent's body, and not at the time the decedent's cancerous condition became apparent.

In *Victorson v. Bock Laundry Mach. Co.* (37 NY2d 395 [373 N.Y.S.2d 39, 335 N.E.2d 275]), we held that the cause of action termed strict products liability accrues as of the date of injury, and inasmuch as such theory of liability is grounded in tort rather than contract, a three-year Statute of Limitations is applicable. Nowhere did the court state, or even suggest, that the social policies upon which the holding in *Victorson* was predicated might prompt a change in the traditional principle that a cause of action grounded in tort commences as of the date of injury.

It is well established in this State that when chemical compounds are injected into a person's body, the injury occurs upon the drugs [sic] introduction, not when the alleged deleterious effects of its component chemicals become apparent. (*Schwartz v. Heyden Newport Chem. Corp.,* 12 NY2d 212, [237 N.Y.S.2d 714, 188 N.E.2d 142] cert den 374 US 808 [83 S.Ct. 1697, 10 L.Ed.2d 1032]). Here, plaintiff's claim being interposed some 20 years after the decedent's injection—the date of injury—the action is time-barred, irrespective of whether the cause of action is couched in terms of strict products liability.

Nor can we conclude that plaintiff may invoke the so-called 'discovery' rule. While in the context of medical malpractice an action may be commenced after discovery of a 'foreign object' in the body of a patient (CPLR 214–a; see *Flanagan v. Mount Eden Gen. Hosp.,* 24 NY2d 427 [301 N.Y.S.2d 23, 248 N.E.2d 871]), it is important to note that, by statute, chemical compounds do not constitute 'foreign objects'. We decline the invitation to extend judicially the discovery rule to strict products liability actions. Such matter is best reserved for the Legislature, and not the courts. (Cf. *Becker v. Schwartz,* 46 NY2d 401, 412 [413 N.Y. S.2d 895, 386 N.E.2d 807]; *Codling v. Paglia,* 32 NY2d 330, 344–45 [345 N.Y. S.2d 461, 298 N.E.2d 622].)"

State trial courts in New York, for the most part, have applied *Schwartz* and *Thornton* to cases involving defective intrauterine devices. For example, in *Lindsey v. A. H. Robins Co., Inc., et al.* (Sup.Ct. Westchester Co., June 24, 1981), a case indistinguishable on its facts from this case, Mr. Justice Marbach held:

"The question presented on defendants' motions is whether the Statute of Limitations began to run on the day the allegedly defective "Dalkon Shield" intrauterine device was inserted into plaintiff Joyce Lindsey or whether the limitation of time should be measured from the onset of the injury claimed, in this case a pelvic infection. This Court is constrained to agree with the position of defendants that the decision of the Court of Appeals in *Thornton v. Roosevelt Hospital,* 47 N.Y.2d 780 [417 N.Y.S.2d 920, 391 N.E.2d 1002], is controlling and mandates a holding that the cause of action accrued upon introduction of the IUD. In my opinion there is little qualitative difference between the injection of a hazardous radioactive dye, as in *Thornton,* and the introduction into the body of the allegedly defective contraceptive device. In neither case may the so-called 'discovery' rule enunciated in *Flanagan v. Mount Eden General Hospital* (24 N.Y.2d 427 [301 N.Y.S.2d 23, 248 N.E.2d 871]) be employed. That rule is to be strictly limited to the 'foreign object' situation (*Matter of Beary v. City of Rye,* 44 N.Y.2d 398 [406 N.Y.S.2d 9, 377 N.E.2d 453], reversing *Merced v. New York City Health and Hospitals Corporation,* 56 A.D.2d 553 [391 N.Y.S.2d 863]). Since service of the earliest process in this litigation ... was more than 4 years after insertion of the IUD, under no theory of the complaint against defendant A. H. Robins, be it negligence, strict products liability or breach of warranty, may this action be maintained...."

In *Borelli v. A. H. Robins Co.* (Sup.Ct. Nassau Co., 1980), *aff'd.* without reaching the limitations issue, 81 A.D.2d 650, 440 N.Y.S.2d 566 (2d Dept. 1981), Justice Murphy reached the same conclusion, as did Justice Altimari in *Forbath v. A. H. Robins Co.* (Sup.Ct. Nassau Co., July 17, 1980). In *Stein v. A. H. Robins Co.* (Sup.Ct. New York Co., February 27, 1981) Justice Kirschenbaum reached the same result, however in a later opinion on reargument (N.Y. L.J. June 23, 1981) he reached a contrary decision. On reargument Justice Kirschenbaum, citing *Victorson v. Bock Laundry Mach. Co.*, 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275, decided after *Schwartz*, but before *Thornton*, noted that:

> "If 1972, the date of the insertion [of the IUD] were to be considered the date of injury, the result would be to bar plaintiff's claim as expired three years before she experienced the pain and allegedly became diseased. In view of the lack of prejudice to the defendant in defending the claim for a design defect in a readily available and identifiable fixed device, the relatively short time span involved and the probable basis for assuming that the plaintiff was not injured in fact until the disease was revealed, the date of injury for calculating the limitations period should be the date when infection developed and manifested itself in 1978. Consequently, this 1980 action was timely filed within the three year personal injury statute of limitations. CPLR 214(5)."

In light of this opinion on reargument in the *Stein* case it seemed that a modification of the *Schwartz-Thornton* rule, *supra*, was to be anticipated. However, thereafter, the New York Court of Appeals in *Steinhardt, supra*, decided October 29, 1981, dealing with actions asserting injuries caused by the inhalation of asbestos particles, held, citing *Schwartz* as well as *Thornton* with approval, that:

> "Plaintiffs now urge, however, that the statutes of limitations applicable to their cases should not run from the date of the last exposure to the invading substance, but rather from the date on which the asbestos related disease was or could have been discovered. We are unable to adopt this proposed standard, and we reaffirm the principle announced in *Schmidt* [*v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 200 N.E. 824] and followed in *Schwartz*. Only recently, in *Thornton v. Roosevelt Hospital* (47 NY2d 780 [417 N.Y.S.2d 920, 391 N.E.2d 1002]), where it was alleged that a thorium dioxide substance manufactured by the defendant and injected into the deceased plaintiff resulted in the onset of cancer, we held 'that the cause of action accrued at the time of invasion of decedent's body, and not at the time' the condition became apparent. There, we noted that further extension of the limited discovery provision contained within the CPLR (214–a) was a matter best reserved for the Legislature, and not for the courts.\* [\* As the dissent recognizes, the Legislature has acted but has so far gone no further than "Agent Orange" cases.] We believe it to be inappropriate and injudicious to intrude into an area best suited for legislative scrutiny."

The clear and continued vitality of the *Schwartz-Thornton* rule in New York is underlined by the dissenting opinion of Judge Fuchsberg in *Steinhardt*, which notes:

> "Once again we are confronted with a determination that plaintiffs who, alleging tortious wrongdoing as a result of which they were injured, are held to have been barred by the statute of limitations before they learned or could have learned that they had sustained the injuries of which they complain.
>
> Though to state this proposition would appear to be to refute it, the majority, under what it takes to be the restraint of three cases, *Schmidt v. Merchants Despatch Transp. Co.* (270 NY 287 [200 N.E.2d 824]), *Schwartz v. Heyden Newport Chemical Corp.* (12 NY2d 212 [237 N.Y.S.2d 714, 188 N.E.2d 142]) and, most recently, *Thornton v. Roosevelt Hospital* (47 NY2d 770 [417 N.Y.S.2d 920, 391 N.E.2d 1002]), a decision in which I filed a dissent, in effect upholds it."

**506**

Assuming for the argument the correctness of Judge Fuchsberg's view, this Federal Court sitting in diversity is not concerned with the policy, wisdom or justice of New York law. Under our commitment to *Erie* principles, we must follow the law of New York as found either in its statutes or in the reported decisions of its highest court.

The decisions referred to above are simply too clear to permit any different disposition of this motion. And, as Justice Marbach noted in *Lindsey, supra,* there is no significant "qualitative difference" to permit eluding the *Thornton* rule as restated in *Steinhardt.*

■ While plaintiff pleads several causes of action against Robins, essentially this is a strict products liability action against the manufacturer. The policy of the New York courts does not permit evasion of the rules affecting such actions merely by also pleading the same facts as separate causes of action under different theories, such as negligence, breach of contract and fraud. *Golia v. Health Ins. Plan of Greater N. Y.,* 6 A.D.2d 884, 177 N.Y.S.2d 550 (2d Dept.), aff'd mem. 7 N.Y.2d 931, 197 N.Y.S.2d 735, 165 N.E.2d 578 (1960).

Our foregoing discussion concerning the manufacturer Robins is also generally applicable to the complaint against Dr. Packer, who also seeks summary judgment. Evidence submitted on this motion by deposition and affidavit, not contradicted by evidence submitted by plaintiff, and viewed most favorably to plaintiff, shows at most that plaintiff was treated by defendant Packer at his office on June 29, 1973 for insertion of the device [which Packer states was performed by his associate, Dr. Myron Weinstein, now deceased and not sued here]. She also consulted Dr. Packer professionally on May 21, 1974, January 30, 1975, July 1, 1975 and on September 20, 1977.

Some time after the 1975 visits, plaintiff moved to Florida. By the time she visited Dr. Packer in September 1977 she had already been treated by another unrelated physician in Florida [Dr. Ira Schulman, not sued here], who had removed the device in April of that year. The September consultation with Packer was solely to seek another opinion as to whether plaintiff should follow the advice of Dr. Schulman who "wanted to do a sonogram" with respect to a mass found in plaintiff's body, and now claimed to have been caused by the use of the IUD. Dr. Packer apparently confirmed Dr. Schulman's opinion. Plaintiff responded by saying that she was intending to return to Florida for further treatment.

■ Under these undisputed facts, the 1977 consultation which was not for treatment, and occurred while plaintiff was already under the care of Dr. Schulman, and after the device had been removed, is insufficient as a matter of law to toll the statute of limitations against the physician under the "continuous treatment" exception found in such cases as *Borgia v. City of New York,* 12 N.Y.2d 151, 237 N.Y.S.2d 319, 18 N.E.2d 777.

With respect to Dr. Packer, several causes of action are pleaded under different legal theories, one of which includes "fraud." Here again, this is essentially a medical malpractice claim, and the statute of limitations cannot be eluded by calling it "fraud."

Both motions are granted. The Clerk shall enter judgment that all relief shall be denied. Because the operative facts were known almost from the inception of the case, the Court as a matter of discretion withholds the award of costs.

So Ordered.