**LONG ISLAND LIGHTING COMPANY, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

No. CV 88–2716.

United States District Court, E.D. New York.

May 10, 1989.

Victor A. Staffieri, Hicksville, N.Y., and Kirkland & Ellis, Chicago, Ill., for plaintiff.

Weil, Gotshal & Manges by James W. Quinn and Mindy J. Spector, New York City, and Mayer, Brown & Platt by William A. Gordon, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff, the Long Island Lighting Company ("LILCO"), brings this action against General Electric Company ("GE"), the supplier of one of the systems designed for use in LILCO's Shoreham Nuclear Power Station ("Shoreham"). LILCO's complaint sets forth eleven separate causes of action. Federal jurisdiction is predicated on GE's alleged violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"). The remaining counts of the complaint allege various state law offenses including breach of contract, fraud, breach of warranty, negligence and professional malpractice.

Although this case was originally commenced in the United States District Court for the Northern District of California, that Court transferred the case, pursuant to 28 U.S.C. § 1404(a), to this Court. Presently before the Court is defendant's motion to dismiss the complaint. After outlining the allegations of the complaint the Court will turn to address the merits of defendant's motion.

## I. THE COMPLAINT

### A. *Factual Allegations*

The parties' business relationship dates back to early 1967 when LILCO issued a request for bids for a nuclear steam supply system ("NSSS") to be used at Shoreham. The NSSS includes the nuclear reactor which is housed in a structure known as a containment. The containment's purpose is to prevent the escape of radioactive steam

into the atmosphere in the event of a system failure known as a "loss of coolant accident" or if steam is released from the reactor through safety release valves during normal operation.

GE responded to LILCO's 1967 request for bids by submitting a proposal to provide certain equipment and services to Shoreham. Among the equipment to be supplied was a pressure containment system that came to be known as the Mark II containment system. LILCO's present action stems from its business dealings with GE with respect to the Mark II system.

The bid and proposal described above culminated in the parties' entering into a contract dated December 10, 1968. That contract is entitled "Contract for Nuclear System Equipment and Related Services for Long Island Lighting Company" ("the NSSS Contract"). When changes, additions and exhibits are added the NSSS contract, it is a document that is several hundred pages in length.

LILCO's complaint is based, in large part, upon GE's alleged misrepresentations and non-disclosures regarding the safety, reliability and licensability of the Mark II containment system. These actions are tied into a violation of the NSSS Contract which provides, *inter alia*, that GE will provide LILCO with certain design criteria and will furnish LILCO "with any such other preliminary information it may have with respect to" the Mark II containment system.

LILCO's complaint traces the course of the parties' business relationship and alleges that GE made misrepresentations and failed to disclose material information regarding the Mark II containment system, its predecessor, the Mark I system, and its successor, the Mark III containment system.

The Complaint describes a series of tests conducted by GE on its Mark I containment system in the late 1950's and early 1960's. LILCO alleges that these tests revealed the presence of violent forces when steam in the system was forced into the system's suppression pool. These so-called "hydrodynamic forces" are described in the complaint as being so violent as to cause the entire test facility to shake and, on one occasion, to result in the recording of an earthquake in a control room several yards from the test facility. Despite GE's alleged observance of these hydrodynamic forces, and alleged internal evaluations calling for further testing, LILCO states that GE chose not to conduct tests to measure the forces and instead, embarked upon an information and sales campaign that portrayed the containment system as "fully tested, safe, reliable and licensable."

GE is alleged to have first presented its Mark II containment system to LILCO in February 1968 at a meeting held in GE's San Jose, California facility. LILCO alleges that GE represented that the Mark II system would work properly because it was designed in accordance with the test data generated in connection with the Mark I containment system. Throughout the course of LILCO's evaluation of the Mark II system, GE supplied LILCO and Stone and Webster, LILCO's architect/engineer, with information regarding the Mark II system. According to LILCO, however, none of the information provided revealed the significance of the hydrodynamic forces or that GE had chosen, contrary to the advice of its engineers, to forego testing of those forces.

In 1968 LILCO began to prepare its Preliminary Safety Analysis Report (the "PSAR"). The PSAR is a document that must be submitted to the Atomic Energy Commission ("AEC"), an agency now known as the Nuclear Regulatory Commission ("NRC"), prior to the granting, by that agency, of a construction permit for a nuclear power plant. LILCO alleges that GE worked closely with LILCO and its engineers in writing the PSAR. According to LILCO, the PSAR contained several misstatements in its description of testing methods used in connection with the pressure containment system. In addition to the PSAR, the complaint details GE's authorship of various articles and reports in the late 1960's and early 1970's. Like the PSAR, these reports are alleged to falsely misrepresent GE's testing and knowledge

of the serious hydrodynamic forces associated with its containment system.

Public disclosure of GE's problems with hydrodynamic forces did not occur, according to LILCO, until 1975 when GE is alleged to have told the NRC, LILCO, and other utilities that purchased GE's containment systems, that tests conducted in 1974 on GE's Mark III system, revealed certain problems relating to hydrodynamic forces. LILCO alleges that the disclosure made in 1975 was only partial in that GE failed, intentionally, to disclose how long it had known of the problems and failed to disclose that for many years, contrary to its own engineers' recommendations, GE chose not to conduct tests to measure and identify hydrodynamic forces.

After GE's 1975 disclosure, LILCO joined together with other utilities that purchased GE's containment system to form the Mark II Owner's Group (the "Owner's Group"). LILCO asserts that the Owner's Group was formed to assure the safe operation of the Mark II system in order to meet NRC requirements. To achieve these goals, LILCO entered into a contract with GE pursuant to which GE agreed to provide consulting services to LILCO and the Owners Group and to conduct testing to define hydrodynamic forces. LILCO alleges that it has made payments to GE in excess of $2 million as its share of payments for services rendered to the Owners Group.

As detailed herein, LILCO currently alleges that GE knew of the hydrodynamic problems associated with its containment systems well before the partial disclosure made in 1975. LILCO alleges that it did not become aware of, nor did it have reason to suspect, GE's prior knowledge of hydrodynamic problems until February 1986. At that time LILCO states that a publicly filed complaint in an action entitled *Cincinnati Gas & Electric Co. v. General Electric Co.*, 656 F.Supp. 49 (S.D. Ohio) (*"Cincinnati Gas"*) first made LILCO aware of GE's early knowledge of its hydrodynamic force problems.

In conclusion, LILCO argues that if GE had made LILCO aware of the hydrody-

namic problems associated with GE's containment systems when GE first became aware of those problems, LILCO would have considered, in a completely different light, alternatives to operating Shoreham as a nuclear power station. Specifically, LILCO alleges that if GE's true problems were known: (1) LILCO would not have entered into the NSSS Contract with GE; (2) LILCO would have cancelled the building of Shoreham or converted it to a fossil fuel plant and, therefore (3) LILCO would not have entered into a consulting contract with GE in connection with the Mark II Owners Group. In addition, LILCO alleges that GE's late disclosures caused LILCO to incur significant expenses in connection with the redesign and modification of the existing containment structure.

## B. *LILCO's Legal Theories*

The facts recited above are alleged in support of eleven, separately stated, legal theories for recovery. The first four theories arise under RICO and the remaining seven arise under state law.

### i. *The RICO Theories*

Count 1 of the complaint identifies GE as a "person" capable of holding a beneficial interest in property, a corporation in continuing operation and an "enterprise" within the meaning of 18 U.S.C. § 1961. The NRC and its predecessor, the AEC are defined as "enterprises" within RICO's definitional section. LILCO alleges that GE violated 18 U.S.C. § 1962(c) when, between the years of 1962 and 1975, GE associated itself with the AEC and NRC and conducted these agencies' affairs through a pattern of racketeering activity. The predicate acts of racketeering are detailed in the complaint and consist of various acts of mail and wire fraud whereby false statements were transmitted to the government agencies to induce these agencies to approve and license GE-designed nuclear power plants.

Count II of LILCO's complaint alleges a similar violation of 18 U.S.C. § 1962(c). In this count, the Shoreham Project Management Organization ("SPMO")—a group of engineers and other LILCO personnel as

well as LILCO's outside engineering firm—is identified as the enterprise whose affairs GE conducted through a pattern of racketeering activity. Like Count I, the predicate acts of racketeering alleged in Count II consist of separately stated acts of wire and mail fraud whereby GE is alleged to have fraudulently communicated information about problems associated with GE's containment systems.

The third RICO count alleged in the complaint identifies the Mark II Owner's Group as an enterprise within the meaning of the RICO statute. GE is alleged to have violated 18 U.S.C. §§ 1962(b) and 1962(c) because it was employed by and associated with the Owner's Group and acquired and maintained an interest in, and participated in the affairs of that group, through a pattern of racketeering activity. The acts of racketeering are, again, described as various acts of mail and wire fraud whereby GE communicated fraudulent statements about its containment systems to the Owner's Group.

The final RICO count alleged in LILCO's complaint alleges a violation of 18 U.S.C. § 1962(a). That count states that GE has invested proceeds derived from a pattern of racketeering activity in itself and in its Nuclear Engineering Division. Like the counts referred to above, the predicate acts of racketeering alleged in Count IV of the complaint consist of various acts of mail and wire fraud whereby GE disseminated allegedly fraudulent information about its pressure containment systems.

### ii. The State Law Theories

LILCO's complaint sets forth seven state law causes of action. Those theories are: (1) fraud; (2) breach of contract; (3) breach of express warranty; (4) breach of warranty of merchantability; (5) breach of warranty of fitness for a particular purpose; (6) negligence and professional malpractice and (7) a claim for punitive damages due to GE's alleged wilfulness, bad faith and malice.

## II. DEFENDANT'S MOTION

Characterizing this lawsuit as LILCO's attempt to shift the economic burden of its mismanagement of Shoreham to GE, defendant has moved to dismiss the complaint in its entirety. Before turning to assess the sufficiency of the complaint the Court notes that in the context of a motion to dismiss the Court must accept the allegations of plaintiff's complaint as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1098 (2d Cir.1988). To succeed in its attempt to dismiss the complaint defendant has the burden of proving that under no interpretation of the facts alleged can plaintiff succeed. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Long Island Lighting Company v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442, 1446 (S.D.N.Y.1986). Keeping these principles in mind, the Court turns to examine each of defendant's challenges to the sufficiency of the complaint.

### A. Substantive Challenges to the Pleading of the RICO Claims: Counts One through Four of the Complaint

As noted above, LILCO has alleged claims pursuant to 18 U.S.C. §§ 1962(a), 1962(b) and 1962(c). Each claim is challenged as insufficient.

### i. Section 1962(a)

Subsection (a) of section 1962 makes it unlawful for a person to invest income derived from a pattern of racketeering activity in an enterprise. *See* 18 U.S.C. § 1962(a). GE is alleged to have committed this RICO violation when it invested, in itself and in its Nuclear Engineering Division, proceeds derived from the sales of NSSS systems. GE argues that a claim pursuant to section 1962(a) is stated only where illegally obtained proceeds are invested in an entity separate from the defendant itself. Since LILCO's section 1962(a) claim alleges the investment of illegally obtained income in GE itself, defendant argues that the claim is insufficient.

The leading authority on this issue appears to be the opinion of the Court of Appeals for the Seventh Circuit in *Haroco v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984),

*aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed. 2d 437 (1985). There, the Court noted the distinction to be drawn between the requirements of section 1962(a) and section 1962(c). While the Court noted that the language of section 1962(c) clearly envisioned that the "person" and "enterprise" were required to be separate entities, no such similar finding was mandated by the language of section 1962(a). Thus, the Court reasoned that the pleadings of a separate person and enterprise is not necessary and that section 1962(a) punishes conduct that is distinct from conduct punishable by section 1962(c). The Court further held that a construction allowing the same entity to constitute the person and enterprise for the purpose of section 1962(a) furthered RICO's broad purpose of affording a remedy to all who are injured by its violation. *Id.* at 402. Thus, the Court concluded that for purposes of section 1962(a), a plaintiff need not allege the separate and distinct existence of the person and the enterprise.

Several courts both within and outside of this circuit have commented favorably on the reasoning of the *Haroco* Court. *See, e.g., Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,* 839 F.2d 782, 790–91 (D.C.Cir.1988). In addition, *Haroco* has been cited favorably by the Court of Appeals in this circuit in *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). *DeMuro v. E.F. Hutton,* 643 F.Supp. 63, 65 (S.D.N.Y.1986); *see Department of Economic Development v. Arthur Andersen & Co.,* 683 F.Supp. 1463, 1482 (S.D.N.Y.1988). Based upon *Haroco's* reasoning, and the widespread acceptance of that reasoning the Court holds that for the purpose of pleading a claim pursuant to section 1962(a) of RICO, the person and the enterprise need not be separate entities. Accordingly, the Court rejects GE's initial challenge to LILCO's Section 1962(a) claim.

■ GE next argues that LILCO's Section 1962(a) claim is deficient because LILCO has failed to plead the requisite proximate cause as set forth in Section 1964(c). That section provides a civil remedy for plaintiffs injured in their business or property "by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

To the extent that GE attempts to resurrect any requirement that LILCO plead and prove a separate "racketeering injury," that attempt is foreclosed by the decision of the Supreme Court in *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), wherein the Court specifically rejected such a notion. Although *Sedima* held that damages recoverable under RICO include recovery for injury caused by the predicate acts, the Court nonetheless left intact the notion that plaintiff's injuries must have been proximately caused by defendant's conduct. *See Sperber v. Boesky,* 849 F.2d 60, 63–64 (2d Cir.1988).

Reviewing the pleadings, as the Court must, in the light most favorable to plaintiff, the Court holds that LILCO has alleged sufficiently the proximate cause requirement of RICO. Specifically, LILCO alleges that funds gained through GE's fraudulent misstatements enabled GE to enhance its ability to market its pressure containment system and related services to LILCO and that LILCO was injured because of its purchase of the system and the related services and equipment. At this stage of the proceedings the Court holds that LILCO has sufficiently alleged injury and proximate cause within the meaning of the RICO statute. For the foregoing reasons the Court declines to dismiss the cause of action based upon Section 1962(a).

ii. *Section 1962(b)*

■ GE's challenge to the sufficiency of LILCO's pleadings of a violation of Section 1962(b) is similar to the attack as to the sufficiency of LILCO's Section 1962(a) claim. Again, GE alleges that LILCO has not properly pled the requisite injury and causation. LILCO's Section 1962(b) claim alleges injury as a result of GE's association with and control of the Mark II Owners Group.

LILCO has alleged that the Owners Group was formed and GE was made a consultant to that group as a result of GE's

fraudulent misstatements. In addition, LILCO alleges that it has incurred expenses of approximately two million dollars in connection with its role as a member of the Owner's Group. In view of the specificity of LILCO's pleading and for the reasons set forth with respect to the Section 1962(a) claim, the Court declines to dismiss LILCO's Section 1962(b) claim.

### iii. *Section 1962(c)*

■ Three of LILCO's RICO causes of action allege GE's violation of Section 1962(c). That section prohibits any person employed by or associated with an enterprise from conducting or participating in the conduct of that enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c); *see Bankers Trust*, 859 F.2d at 1102.

GE's attack on LILCO's Section 1962(c) claims centers around the alleged insufficient pleading of the "enterprise" element. The parties' briefs discuss, in extensive detail, the law of the Second Circuit with respect to the proper pleading of the enterprise element. Since the briefing of this case, however, the Court of Appeals for the Second Circuit has decided two cases that changed dramatically the state of the law on the issues briefed. Those cases, *United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) and *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.1989), have rejected much of the case law upon which the parties have relied and have set forth new standards for determining the sufficiency of a Section 1962(c) complaint. In light of the present state of the law, the Court will focus on these recent cases to determine the sufficiency of plaintiff's Section 1962(c) claims.

Prior to the recent Court of Appeals decisions referred to above, courts focused on the "enterprise" element when determining whether a RICO complaint alleged sufficiently related and continuous action on defendant's part so as to constitute a RICO violation. While both *Indelicato* and *Beauford* recognize that RICO was not meant to reach "isolated" or "sporadic" activity, both cases hold that the analysis of whether a claim is properly pled should focus on RICO's "pattern" element rather than on the enterprise element. *See Beauford*, 865 F.2d at 1390–91; *Indelicato*, 865 F.2d at 1381. This represents a shift from prior law holding that the allegation of any two predicate acts satisfies the pleading of the pattern requirement. Thus, it is clear that the Court's present inquiry must focus on whether LILCO has properly alleged the existence of a RICO pattern so as to support a claim pursuant to Section 1962(c).

When outlining the new requirement for pleading a RICO pattern, the Second Circuit rejected much of its prior law on the pleading of the enterprise element. Thus, the Court held that a RICO pattern could exist "without proof of multiple schemes, multiple episodes, or multiple transactions; and that acts that are not widely separated in time or space may nonetheless properly be viewed as separate acts of racketeering activity for purposes of establishing a RICO pattern." *Beauford*, 865 F.2d at 1391. The Court also rejected the notion that a RICO pattern must allege an ongoing scheme with no demonstrable ending point. *Id.* Instead, the Court held that a RICO pattern is properly alleged where the facts show sufficient relatedness and continuity or threat of continuity and cannot be deemed, as a matter of law, to be isolated or sporadic. *See id.*

Applying the principles of *Indelicato* and *Beauford* here, the Court has little difficulty concluding that LILCO has sufficiently alleged a RICO pattern of racketeering activity. As noted in greater detail above, LILCO has set forth several incidents, occurring over a number of years, of GE's allegedly fraudulent mail and wire communications concerning its pressure containment systems. Each of these communications are related in that they all refer to GE's alleged cover-up of problems with hydrodynamic forces. There is no doubt that each of these communications sufficiently alleges separate acts of mail or wire fraud. *See United States v. Corey*, 566 F.2d 429, 430 n. 2 (2d Cir.1977) (elements of mail or wire fraud are: (1) existence of scheme to defraud and (2) use of interstate mails or transmission facilities in furtherance of the fraud). The Court further holds that

LILCO has alleged sufficient relatedness and continuity among the acts to constitute a properly pled RICO pattern. Accordingly, the Court declines to dismiss LILCO's section 1962(c) claims for failure to properly allege a RICO pattern.

### B. Challenges to Claims Alleging Breach of Contract, Breach of Warranty, Negligence and Professional Malpractice: Counts Six through Ten of the Complaint

Counts six through ten of LILCO's complaint set forth causes of action based upon breach of contract, breach of warranty and negligence or professional malpractice. In addition to raising substantive objections to each of these counts, GE asserts that each claim is barred by applicable statutes of limitation. The timeliness of each claim is discussed below.

### i. *Applicable Statutes*

Counts six through nine of LILCO's complaint set forth various causes of action based upon breach of contract and breach of warranty. Under New York law, a cause of action for breach of contract or warranty carries either a four or six year statute of limitation. If the contract is deemed primarily a contract for the sale of goods, the four year statute in New York's Uniform Commercial Code applies. *See* N.Y.U.C.C. § 2–725(1) (McKinney 1964). If, on the other hand, the essence of the contract is deemed to be the sale of services, the six year time period set forth in Section 213(2) of New York's Civil Practice law and Rules ("CPLR") applies. *Consolidated Edison Co. of New York, Inc. v. Westinghouse Electric Corp.*, 567 F.Supp. 358, 361 (S.D.N.Y.1983); *see* N.Y.Civ.Prac. L. & R. § 213(2) (McKinney 1972).

Whether a contract is governed by the UCC or by the CPLR, the plaintiff's cause of action is said to accrue when the breach occurs. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 495 N.Y.S.2d 1, 4, 485 N.E.2d 208, 211 (1985); *Marathon Enterprises, Inc. v. Feinberg*, 595 F.Supp. 368, 372 (S.D.N.Y. 1984). Such breach occurs when the contract is entered into or when the non-conforming goods are delivered, and accrual is not dependent upon the aggrieved party's knowledge of the breach. *See* N.Y.U.C.C. § 2–725(2) (McKinney 1964) (describing accrual under Uniform Commercial Code); *Texas Eastern Transmission Corp. v. General Electric Co.*, 601 F.Supp. 627, 629 (S.D.N.Y.1985) (describing accrual of breach of contract action under CPLR); *Fourth Ocean Putnam Corp.*, 495 N.Y.S. 2d at 3–4, 485 N.E.2d at 210–211 (same); *see also City of Niagara Falls v. Rudolph*, 97 A.D.2d 971, 469 N.Y.S.2d 42, 43 (4th Dep't 1983) (breach of contract claims accrue upon payment and not when plaintiff discovers injury). The only exception to the accrual upon delivery rule applies in cases where a warranty explicitly extends to future performance. In such cases the accrual does not occur until the time when that future performance is to occur. *See* N.Y.U.C.C. § 2–725(2) (McKinney 1964).

Count ten of LILCO's complaint sets forth a claim for negligence and professional malpractice. Under New York law, negligence claims are governed by the three year statute of limitations set forth in section 214(4) of the CPLR. *See* N.Y.Civ.Prac. L. & R. § 214(4) (McKinney 1972) (setting forth statute of limitations for action seeking to recover damages for an injury to property). Although causes of action for *medical* malpractice are governed by the two and one-half year statute of limitations set forth in section 214–a of the CPLR, no similar provision shortens the limitations period in other cases of alleged professional malpractice. Thus, such causes of action are governed by the same three year statute of limitations referred to above. *See* N.Y.Civ.Prac. L. & R. § 214(6) (McKinney 1972).

A negligence or malpractice cause of action is said to accrue when the acts or omissions constituting negligence produce plaintiff's injury. *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 744 (2d Cir.1979); *Schwartz v. Heyden Newport Chemical Corp.*, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 717, 188 N.E.2d 142, 144 (1963), *cert. denied*, 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032 (1963). Like the

breach of contract and warranty actions referred to above, the accrual of these actions is not affected by plaintiff's knowledge of the tort. *See Kirkland v. American Title Ins. Co.*, 692 F.Supp. 153, 156 (E.D.N.Y.1988); *Alexander & Baldwin Inc. v. Peat, Marwick, Mitchell & Co.*, 385 F.Supp. 230, 235 (S.D.N.Y.1974); *City of Niagara Falls*, 469 N.Y.S.2d at 43; *Medina Medical Bldg., Inc. v. Erie County Sheriff's Dep't.*, 55 A.D.2d 1026, 391 N.Y. S.2d 257, 258 (4th Dep't 1977).

ii. *Application of the Statutes of Limitation to LILCO's Claims*

■ Although the NSSS Contract is dated as of December 1968 LILCO's complaint alleges that it was not signed until September 1970. Even assuming that the contract was entered into in 1970, LILCO's breach of contract and breach of warranty causes of action, alleged in this case commenced in 1988, are clearly untimely under the principles referred to above. Any attempt to come within the warranty of "future performance" rule, by construing GE's continuing work on the system as prolonging the accrual date of the applicable statutes, must be rejected as unsupported by New York law. *See Triangle Underwriters*, 604 F.2d at 745.

■ Similar conclusions can be reached with respect to LILCO's negligence and malpractice claims. As noted above, such claims are deemed to accrue when plaintiff suffers injury as a result of defendant's negligent acts or omissions. Since LILCO alleges that GE's cover-up dates back to the early days of the parties' contractual relationship, there is little doubt that LILCO's injuries were suffered when problems associated with hydrodynamic forces first occurred. There can be no doubt that this occurred in excess of three years prior to the institution of this lawsuit. Consequently, the negligence and malpractice claims were barred by the time this lawsuit was commenced.

In apparent recognition of the untimeliness of its breach of contract, breach of warranty and negligence/malpractice claims, LILCO has argued two theories in support of the claim that Counts six through ten of its complaint are not time barred. First, LILCO argues that GE should be estopped from asserting its statutes of limitation defenses. Second, LILCO argues that the "continuous treatment" doctrine salvages its claims.

■ The doctrine of equitable estoppel will prevent a defendant from asserting a statute of limitations defense under certain limited circumstances. Specifically, it must be shown that the parties are in a fiduciary relationship, that defendant abused that relationship by intentionally concealing the actionable conduct and that plaintiff justifiably relied on defendant's concealment. *See Cabrini Medical Center v. Desina*, 64 N.Y.2d 1059, 489 N.Y.S.2d 872, 874–75, 479 N.E.2d 217, 219–20, (1985); *Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 262, 377 N.E.2d 713, 716, (1978); *Rockwell v. Ortho Pharmaceutical Co.*, 510 F.Supp. 266, 270 (N.D.N.Y.1981).

Since it is clear to the Court that two sophisticated business entities such as LILCO and GE cannot be said to have a fiduciary relationship with each other, LILCO's attempt to invoke the equitable estoppel doctrine must fail. *Cf. Triangle Underwriters*, 604 F.2d at 745 (refusing to find existence of fiduciary relationship between manufacturer and buyer of computer equipment); *Accusystems v. Honeywell Information System, Inc.*, 580 F.Supp. 474, 481 (S.D.N.Y.1984) (refusing to find that a buyer-seller relationship is of a fiduciary nature so as to support an action based upon negligent misrepresentation).

■ For similar reasons the Court rejects LILCO's attempt to rely on the "continuous treatment" theory to extend the applicable statute of limitations. The continuous treatment theory extends the accrual of a plaintiff's cause of action to the date upon which defendant last rendered services to plaintiff in connection with continuous treatment for the same condition. This theory is codified in section 214–a of the CPLR and applies to actions alleging dental, medical and podiatric malpractice. N.Y.Civ.Prac. L. & R. § 2I4–a (McKinney Supp.1989). In addition, case law has ap-

plied the continuous treatment doctrine to other professionals such as accountants and lawyers. *See Triangle Underwriters, Inc.,* 604 F.2d at 744–46.

In each case where the continuous treatment doctrine has been applied, however, its application has depended on the "particular relationship of trust that exists between a lay plaintiff and a professional defendant." *Id.* Here, as noted above, the purely business relationship of the parties forecloses a finding of such a fiduciary relationship. In light of this, LILCO's claim that the continuous treatment doctrine extends the applicable statutes of limitation must fail.

For the reasons set forth above, the Court holds that Counts six through ten of the complaint alleging breach of contract, breach of warranty, negligence and malpractice are time-barred. Accordingly, the Court need not reach the additional challenges set forth by GE to those claims.

### C. *Challenges to the Fraud Claim: Count Five of the Complaint*

Count five of LILCO's complaint alleges fraud on the part of GE. GE attacks the sufficiency of this claim on both statute of limitation and substantive grounds. Each claim is discussed below.

### i. *The Timeliness of the Fraud Claim*

The timeliness of this claim is governed by Sections 203(f) and 213(9) of the CPLR. In substance, these sections provide that an action based upon fraud must be commenced within six years of the fraud or within two years of the date upon which plaintiff actually discovered or could, with reasonable diligence, have discovered the fraud, whichever is later. *Riis v. Manufacturers Hanover Trust Co.,* 632 F.Supp. 1098, 1102 (S.D.N.Y.1986); *Marathon Enterprises, Inc. v. Feinberg,* 595 F.Supp. 368, 371–72 (S.D.N.Y.1984); *Stull v. Bayard,* 424 F.Supp. 937, 941 (S.D.N.Y.), *aff'd.,* 561 F.2d 429 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed. 2d 783 (1978).

Here GE argues that the last year in which LILCO actually or could have discovered GE's alleged fraud was 1975—the year in which GE's disclosure of problems it was having with hydrodynamic forces prompted the formation of the Mark II Owners Group. LILCO, characterizing the 1975 disclosure as only "partial," counters that knowledge of GE's fraud did not occur until 1986 when the public filing of documents in the *Cincinnati Gas* litigation made LILCO aware of GE's early knowledge and subsequent cover-up of the hydrodynamic force problems. Since LILCO argues that GE's pre-contract knowledge is the "essence" of LILCO's fraud claim it argues that the claim is timely.

The issue as thus framed is whether GE's alleged fraud should, with reasonable diligence, have been discovered more than two years prior to the commencement of this lawsuit. Under New York law the test is whether "the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded." *Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983). If such circumstances are deemed to exist a "duty of inquiry arises, and if [the plaintiff] omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to [the plaintiff]." *Id.*

Applying these principles to the present case, the Court cannot hold that LILCO acquired knowledge sufficient to trigger the running of the statute of limitations prior to 1986. If, at trial, it is developed that LILCO did indeed acquire such knowledge, the fraud claim will be properly dismissed. At the present stage of the proceedings, however, it is too early to tell whether LILCO's fraud claim should be deemed to have accrued prior to 1986. Accordingly, the Court declines to dismiss Count five of LILCO's complaint as untimely.

### ii. *Remaining Challenges to Fraud Claim*

In addition to arguing the bar of the statute of limitations, GE argues that LILCO's fraud claim is insufficient: (1) because LILCO cannot prove justifiable re-

liance and (2) because the fraud claim states only the breach of a contract.

For similar reasons to those stated in connection with the Court's rejection of GE's statute of limitations defense, the Court rejects the notion that LILCO's fraud claim must be dismissed due to LILCO's inability to prove justifiable reliance. Such a claim is factual in nature and must await development at trial.

■ GE's final attack on LILCO's fraud claim characterizes the claim as stating only a "fraudulent" breach of contract and argues that no such action exists under New York law. GE states, correctly, that a breach of contract action is not converted to a fraud claim by stating merely that defendant "intentionally" or "fraudulently" breached its contractual obligations. *See Carlucci v. Owens–Corning Fiberglass Corp.*, 646 F.Supp. 1486, 1491 (E.D.N.Y. 1986). GE fails to recognize, however, that a valid cause of action in fraud can be stated even where the parties have a contractual relationship.

Particularly instructive on this issue is the opinion of the Court in *Cincinnati Gas & Electric Co. v. General Electric*, 656 F.Supp. 49 (S.D.Ohio 1986). There, on facts nearly identical to those present here, the Court held that plaintiff had alleged sufficient facts to state a cause of action in fraud and that the fraud claim existed independently of any breach of contract action that plaintiff might have possessed. *See Cincinnati Gas*, 656 F.Supp. at 72–73. Althouth *Cincinnati Gas* was decided under Ohio State law, the elements of a fraud cause of action in that state are identical to the elements required to be proven under New York law. *Compare Cincinnati Gas*, 656 F.Supp. at 71 (elements of fraud under Ohio law include materiality, falsity, scienter, reliance and damage), *with Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (elements of fraud under New York law include materiality, falsity, scienter, reliance and damages).

Here, as in *Cincinnati Gas*, LILCO has alleged fraudulent representations that go beyond the allegation of fraudulent nonperformance of contractual obligations. As noted in greater detail above, LILCO has alleged a pattern of intentional misstatements that enabled GE to market its pressure containment systems and to cover up years of problems associated with those systems. Under these circumstances, the Court holds that LILCO has properly alleged a claim based upon GE's alleged fraud. Thus, while the Court expresses no opinion as to whether that claim will succeed, the Court declines at this stage of the proceedings to dismiss the fraud claim as insufficiently pled.

### D. *The Timeliness of the RICO Claims*

LILCO's RICO claims are governed by a four year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). The accrual of a RICO cause of action is governed by principles similar to those applied in cases of fraud. Thus, it has been held that a RICO claim accrues "each time the plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962." *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir.1988).

According to GE, LILCO's 1975 knowledge of the problems associated with hydrodynamic loads bars the assertion of RICO claims in this lawsuit filed in 1988. As stated above, the Court cannot hold, at this time, that LILCO acquired the knowledge necessary to trigger the running of the fraud statute of limitations in 1975. Similarly, the Court declines to hold that LILCO acquired the knowledge necessary to trigger the running of the RICO statute of limitations. Accordingly, the Court declines to dismiss LILCO's RICO claims as time barred.

### E. *Punitive Damages: Count Eleven of the Complaint*

The final count of LILCO's complaint seeks punitive damages because of GE's alleged bad faith. Punitive damages in a fraud case are recoverable only if the defendant is found to have engaged in gross,

303

wanton or wilful fraud or other morally culpable conduct. *Rush v. Oppenheimer & Co., Inc.*, 596 F.Supp. 1529 at 1531–32 (S.D.N.Y.1984). At this stage of the proceedings it is too early to tell whether GE's conduct can be said to rise to a level that requires the imposition of punitive damages. Accordingly, the Court declines to dismiss LILCO's punitive damage claim at this juncture.

### III. CONCLUSION

Counts six, seven, eight, nine and ten of LILCO's complaint are dismissed as time-barred. The remaining counts of LILCO's complaint may proceed to trial.

SO ORDERED.