**NORTH STAR CONTRACTING CORP. and Tern Star, Inc., a joint venture, Plaintiffs,**

v.

**LONG ISLAND RAIL ROAD CO., Thomas C. Caruso, Parsons Brinckerhoff/Morrison–Knudsen, a joint venture, Parsons Brinckerhoff, Quade & Douglas, Inc., Morrison–Knudsen Co., Inc. and Robert J. Hill, Defendants.**

No. CV 88–1620.

United States District Court, E.D. New York.

Oct. 25, 1989.

Fried, Frank, Harris, Shriver & Jacobson by Ira S. Sacks, New York City, for plaintiffs.

Sacks, Montgomery, Pastore & Levine by Harry P. Sacks, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

North Star Contracting Corp. and Tern Star, Inc., a joint venture engaged in the business of general contracting (collectively "North Star"), bring this action against the Long Island Rail Road Co. ("LIRR" or the "Railroad"), and certain related individuals and entities. Federal jurisdiction is predicated on alleged violations of the Racketeer Influenced Corrupt Organizations Act ("RICO") and the Civil Rights Act of 1871, 42 U.S.C. Section 1983. Presently before the Court is defendants' motion to dismiss these federal causes of action.

I. Background

A. *Factual Allegations*

In 1981 New York's legislature authorized the funding of a capital improvement project for, among other entities, the LIRR. Pursuant to this project the Railroad opened bids for two construction contracts to be performed at the LIRR Hillside Support Facility. These contracts have been referred to in this litigation as "Hillside I" and "Hillside II." On August 22, 1984 the Hillside I contract was awarded to North Star to serve as general contractor at a price of $14,460,000. Hillside II was awarded to North Star on July 22, 1985 at a contract price in excess of $81 million.

North Star's fifty-six page complaint sets forth, in one hundred and forty separate paragraphs, the problems incurred in carrying out the contracts. For example, North Star complains of unanticipated cost increases, delays caused by the Railroad, defective contract documents and the Railroad's breach of its contractual obligation to provide adequate insurance. North Star further complains of interference by other general contractors and the Railroad's broken promises to make agreed upon payments. In sum, North Star's complaint relates a story of alleged misconduct, fraud and mismanagement by the LIRR and its agents and employees.

According to North Star, the Railroad's inability to adequately carry out its capital improvement project led to defendants' "concerted and fraudulent effort" to enter into a conspiracy to cover up mismanagement. This "conspiracy" is alleged to include all defendants. Thus, the conspirators are: (1) the Railroad; (2) defendant Thomas C. Caruso, an LIRR employee; (3) defendant Parsons Brinkerhoff/Morrison-Knudsen ("PBMK"), the current construction manager of the Hillside projects and Parsons, Brinkerhoff, Quade & Douglas, Inc. and Morris-Knudsen Co., Inc., and (4) defendant Robert J. Hill, PBMK's Project Director.

North Star alleges that defendants' conspiracy involved the commission of a series of illegal activities, including the fraudulent use of the United States mails, the

violation of the Hobbs Act, 18 U.S.C. Section 1951, and extortion chargeable under state law. The conspiracy was allegedly aimed at covering up the Railroad's mismanagement by making North Star a scapegoat and ultimately terminating North Star's contracts with the LIRR without cause.

### B. *North Star's Legal Theories*

North Star's complaint sets forth six causes of action. The first cause of action alleges violations of RICO. Count II of North Star's complaint alleges civil rights claims based upon alleged violations of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. Counts three through six of plaintiffs' complaint allege state law causes of action for tortious interference with contract, common law fraud and negligent representations and omissions. Because the present motion is directed only to the federal causes of action, the Court turns its focus to these claims.

#### i. The RICO Claims

Defendants are alleged to have violated 18 U.S.C. Sections 1962(a), (c) and (d). All defendants are identified as individuals or entities capable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. Section 1961. The Railroad is alleged to be an enterprise within the meaning of that same section. The defendants, other than the Railroad, are alleged to be employed by or associated with the Railroad. During the course of this association or employment, the Railroad is alleged to have received and invested in itself the proceeds of a pattern of racketeering activity in violation of 18 U.S.C. Section 1962(a) ("Section 1962(a)"). The violation of 18 U.S.C. Section 1962(c) ("Section 1962(c)") is alleged because the defendants (other than the LIRR) are stated to have conducted the Railroad's affairs through a pattern of racketeering activity. Because defendants are alleged to have "conspired and combined" to commit the violations of sections 1962(a) and (c), they are also alleged to have violated 18 U.S.C. Section 1962(d) ("Section 1962(d)").

#### ii. The Civil Rights Claims

North Star's civil rights claims allege violations of the Fourteenth Amendment to the United States Constitution. The Railroad is alleged to be a state actor that arbitrarily and capriciously injured North Star as part of its plan to cover up the LIRR's mismanagement and incompetence. Such conduct is alleged to have deprived North Star of its procedural and substantive due process rights as well as its right to equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

### II. Discussion

#### A. *General Principles*

In the context of a motion to dismiss the allegations of plaintiffs' complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1098 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). To prevail, defendants must satisfy the burden of proving that under no interpretation of the facts alleged can plaintiff succeed. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). With these principles in mind, the Court turns to assess the sufficiency of the complaint.

#### B. *Challenges to the Sufficiency of the RICO Claims*

Defendants attack North Star's RICO causes of action on several grounds. The claim pursuant to Section 1962(c) is attacked on the grounds: (1) that no predicate act has been adequately alleged and (2) that North Star has failed to properly allege a "pattern" within the meaning of RICO. The Section 1962(a) claim is alleged to be deficient for the same reasons and, in addition, on the ground that the Railroad has been improperly alleged to be both the "enterprise" and the "person" committing the RICO violation. North Star's Section 1962(d) conspiracy claim is argued to fail because the claims pursuant to subsections (a) and (c) are insufficient and because North Star has failed to adequately allege

the existence of a conspiracy. Finally, defendants attack all of the RICO claims stated against the LIRR on the ground that the Railroad is a public entity that may not be sued under RICO.

### i. Section 1962(c)

■ Section 1962(c) prohibits any person employed by or associated with an enterprise from conducting or participating in the conduct of that enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. Section 1962(c); *see Bankers Trust,* 859 F.2d at 1102. In support of its claim brought pursuant to this section, North Star identifies the Railroad as the enterprise. The predicate acts alleged to constitute the pattern of racketeering activity consist of defendants' alleged violation of the mail fraud statute, the Hobbs Act, 18 U.S.C. Section 1951 and extortion chargeable under state law.

■ Defendants' initial attack to North Star's RICO cause of action claims that no Section 1962(c) claim is stated because no predicate act has been properly alleged. North Star's complaint alleges at least six separate mailings by defendants. Each of these mailings are alleged to be made in furtherance of defendants' scheme to cover-up its mismanagement and waste. Such allegations allege sufficiently the necessary two predicate acts of mail fraud. *See United States v. Corey,* 566 F.2d 429, 430 n. 2 (2d Cir.1977) (elements of mail fraud are: (1) existance of scheme to defraud and (2) use of interstate mails or transmission facilities in furtherance of the fraud). Because this Court finds that mail fraud has been sufficiently alleged, it is unnecessary to consider whether violations of the Hobbs Act or extortion under State law have been adequately stated. Having found that North Star has sufficiently alleged predicate acts of racketeering, the Court turns to the question of whether a sufficient pattern of racketeering has been alleged.

In *United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) and *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.1989), the court of appeals for this circuit discussed RICO's "pattern" requirement. More recently, in *H.J. Inc. v. Northwestern Bell Telephone*

*Co.,* — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court examined the same question. Taken together, these cases stand, at the very least, for the proposition that something more than the commission of two predicate acts is needed to properly allege a pattern of racketeering activity within the meaning of RICO. Although the Supreme Court's description of what that elusive "something more" consists of, is somewhat vague, *see Northwestern Bell,* 109 S.Ct. at 2907 (Scalia, J. dissenting) (referring to majority's guidance to lower courts as being as helpful as saying that "life is a fountain"), certain concepts can be discerned.

■ It is clear that a pattern cannot be formed by purely "sporadic activity." *Northwestern Bell,* 109 S.Ct. at 2900. Although a RICO pattern does not require proof of multiple episodes or schemes, *see id.* at 2899, there must be sufficient continuity and relatedness among the acts, *id.* at 2900. Criminal acts are related if they have the "same or similar purposes, results, participants, victims or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Northwestern Bell,* 109 S.Ct. at 2901, quoting, 18 U.S.C. Section 3575(e). The continuity element refers to either a closed period of repeated conduct or to past conduct that may be repeated. The "closed-ended" concept of continuity may be proven by showing "a series of related predicates extending over a substantial period of time." *Id.* at 2902.

■ Applying these flexible concepts to the present case leads the Court to conclude that North Star has sufficiently alleged the requisite pattern of racketeering activity. North Star has alleged a scheme spanning several years aimed at covering up Railroad mismanagement. The allegations of mismanagement are documented by an independent audit report prepared by a state agency. The participants in the alleged scheme are alleged to have knowingly defrauded North Star of payments due. As noted above, predicate acts are sufficiently stated because defendants are alleged to have used the mails in further-

ance of their scheme to defraud. Although this Court would once have described the present dispute as an ordinary construction dispute, the broad interpretation afforded RICO by higher Courts binds this Court. Applying the principles announced by those higher Courts, this Court holds that a pattern of racketeering in violation of Section 1962(c) has been pled.

#### ii. Section 1962(a)

■ Subsection (a) of section 1962 makes it unlawful for a person to invest income derived from a pattern of racketeering activity in an enterprise. *See* 18 U.S.C. Section 1962(a). Because the Railroad is alleged to have received income through its racketeering activities and to have invested that income in itself, it is alleged to have violated Section 1962(a). Defendants argue that the Railroad cannot be liable under Section 1962(a) because that section requires that the "person" and the "enterprise" be separate entities. This Court disagrees.

As noted by this Court in *Long Island Lighting Company v. General Electric Co.*, 712 F.Supp. 292 (E.D.N.Y.1989), the pleading of a separate person and enterprise is required under Section 1962(c) but is not required under Section 1962(a). *See id.* at 296–97. For the reasons stated therein, the Court adheres to this recent holding and refuses to dismiss North Star's Section 1962(a) claim.

#### iii. Section 1962(d)

■ Defendants attack North Star's Section 1962(d) claim on the grounds that no violation of Section 1962(a) or (c) have been proven and no conspiracy has been sufficiently alleged. Since violations of Section 1962(a) and (c) have been properly alleged, defendants first argument must be rejected. The argument that a conspiracy has not been alleged is also rejected. A RICO conspiracy is properly pled by alleging an agreement to violate RICO's substantive provisions. *See United States v. Benveneto*, 836 F.2d 60, 72 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988). North Star has adequately alleged the facts upon which its conspiracy claim is based. The question of whether these facts can be proven to show each defendants' participation in the conspiracy is a question that must await trial.

#### iv. LIRR's Alleged Immunity

Defendants final challenge to the RICO claims argues that the Railroad is a "public body" that is immune from suit under RICO. In support of their position, defendants rely on cases holding that municipal corporations may not be held liable under RICO. *See, e.g., Albanese v. City Federal Savings and Loan Assoc.*, 710 F.Supp. 563, 567–69 (D.N.J.1989); *In re Citisource, Inc. Securities Litigation*, 694 F.Supp. 1069, 1079–80 (S.D.N.Y.1988); *Massey v. City of Oklahoma City*, 643 F.Supp. 81, 85–86 (W.D.Okl.1986). These cases stand for the proposition that a municipal corporation, because it is incapable of forming the criminal intent necessary to commit a predicate criminal act, cannot be held liable under RICO. *See, e.g., Citisource*, 694 F.Supp. at 1079–80; *Massey*, 643 F.Supp. at 85. Thus, the foregoing authorities rest upon the proposition that while a municipal corporation is a "person" within the meaning of RICO, *see* 18 U.S.C. Section 1961(3), it is a "person" that is incapable of performing any predicate criminal act and therefore cannot violate RICO.

The Supreme Court explained the limitation on municipal liability in the context of the Civil Rights Act of 1871 in *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). There, the Court noted that the common law tradition of municipal immunity from the imposition of punitive damages was based upon the notion that a municipal corporation existing for the public benefit can commit neither a malicious nor a criminal act. *Newport*, 453 U.S. at 261–62, 101 S.Ct. at 2756–57. The Court distinguished the relationship between officers of a municipal corporation and the citizenry from that existing between stockholders of a private corporation and their agents. Since municipalities act for the public's benefit, the Court noted that "there is not the same reason for holding municipal corporations, engaged in

the performance of acts for the public benefit, liable for the willful or malicious acts of its officers, as there is in the case of private corporations." *Id.* (quoting *Hunt v. City of Boonville*, 65 Mo. 620 (1877)).

Defendants argue that since the Railroad is a wholly owned subsidiary of the Metropolitan Transit Authority ("MTA"), and the MTA is a "public benefit corporation," the LIRR is entitled to the same RICO immunity afforded municipal corporations. Defendants also argue, in the alternative, that the Railroad cannot be subject to RICO's treble damage provisions since New York's highest court has ruled that the Railroad cannot be sued for treble damages. *See Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 521 N.Y. S.2d 653, 655, 516 N.E.2d 190, 192 (1987).

The question of the Railroad's immunity from RICO liability is new to this Court. Since this Court is inclined to agree with the proposition that municipal corporations may not be liable under RICO, the question raised is whether the Railroad's status as a public benefit corporation places it in the same position as a municipal corporation.

Before embarking on its discussion the Court notes that its decision on this immunity issue is not dictated by the waiver of immunity found in the Public Authorities Law. *See* N.Y.Pub.Auth.L. Section 1276 (McKinney 1982). Municipalities like the City of New York, found to be immune from suit under RICO, have also waived their sovereign immunity. *See* N.Y. Ct.Cl. Act. Section 8 (McKinney 1963). Such waiver does not translate to a finding that a public benefit corporation or a municipality can engage in criminal acts. Accordingly, the Court turns to consider whether public benefit corporations may be liable under RICO.

Public benefit corporations are unique corporate entities created pursuant to New York's Public Authorities Laws and are referred to as bodies corporate and "politic." N.Y.Pub.Auth.L. Section 1263(1)(a) (McKinney 1982). Although public benefit corporations are not, in every respect, identical to municipal corporations, many similarities exist. Like municipalities, public benefit corporations perform "essential governmental functions" and "exist for the benefit of the people of the State of New York." N.Y.Pub.Auth.L. Section 1275 (McKinney 1982); *see also* N.Y.Pub. Auth.L. Section 1264(2) (declaring purpose of MTA to be for the benefit of the people of the State of New York and stating that MTA performs an essential governmental function) (McKinney 1982).

Because of their status, public benefit corporations enjoy certain privileges such as a limitation on the judgment interest rate, *see* N.Y.Pub.Auth.L. Section 1276(6) (McKinney 1982), and an exemption from the payment of taxes, *see* N.Y.Pub.Auth.L. Section 1275 (McKinney 1982). The majority of the funding for the Railroad comes from taxpayer revenues and subsidies derived from public sources. *Clark–Fitzpatrick*, 521 N.Y.S.2d at 655, 516 N.E.2d at 192.

These unique characteristics of public benefit corporations have led New York's highest court to conclude that the Railroad is immune from the imposition of punitive damages. *See Clark–Fitzpatrick*, 521 N.Y.S.2d at 655, 516 N.E.2d at 192. Such a holding is predicated, in large part, upon the finding that the Railroad is a unique corporate entity existing for the public benefit. *See id.* As demonstrated above by cases like *Albanese, Citisource* and *Massey*, a holding of immunity from RICO liability rests on similar if not the same considerations. Specifically, if a corporation cannot perform the malicious acts necessary for the imposition of punitive damages then, similarly, it cannot perform the criminal acts necessary for the imposition of RICO liability. *See Newport*, 453 U.S. at 261–62, 101 S.Ct. at 2756–57 (municipality can commit neither malicious nor criminal act).

Because of the important similarities between municipal corporations and public benefit corporations demonstrated above, the Court holds that the Railroad cannot perform the necessary predicate acts to be held liable for a RICO violation. Accordingly, the Court declines to find that the Railroad is capable of violating RICO.

This is as true for the violation of Section 1962(a) as it is for the violation of Section 1962(c). Each of RICO's substantive provisions imposes liability only upon entities capable of committing criminal acts. Footnote number 16 of *Citisource*, relied upon by North Star to show the possibility of a public body's liability under Section 1962(a), is not to the contrary. That footnote refers generally to the concept of *respondeat superior* and states that the failure to impose liability upon this theory "does not allow a culpable entity to escape all liability under RICO." *Citisource*, 694 F.Supp. at 1080 n. 16. The footnote goes on to say that "where an entity is alleged to have been an active perpetrator, and not merely a passive instrument of the racketeering activity, it may face liability under Section 1962(a)." *Id.* In this Court's view, the foregoing is a general comment on RICO liability that, when read in its proper context, does nothing to change the holding that a municipality cannot be liable for any RICO violation. *Accord Albanese*, 710 F.Supp. at 568. In view of the foregoing, the Court dismisses all RICO claims stated against the Railroad.

### C. *The Civil Rights Claims*

North Star's civil rights claims allege violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. In addition to identifying its contractual right to payment as a property right, North Star claims a deprivation of liberty based upon the alleged disparagement to its reputation that followed the termination. Although North Star's complaint is fairly vague in its reference to the alleged civil rights violations, its claims are stated in a clearer fashion in its memoranda of law. Specifically, North Star alleges that the deprivation, without a hearing, of its contractual right to payment and its liberty interest in its good reputation amounted to a procedural due process violation. The Railroad's alleged abuse of its governmental power "for the purposes of oppression by maliciously depriving North Star of its vested contract rights" is alleged to constitute a substantive due process violation.

An equal protection violation is claimed on the ground that North Star was terminated for cause instead of for convenience.

Defendants attack the sufficiency of North Star's civil rights claims on several grounds. In addition to arguing that no protected property or liberty right has been alleged, defendants argue that North Star can receive all process that is due in the form of a post-deprivation state court breach of contract action. Defendants also argue that this is not a case of government oppression that would give rise to a substantive due process claim. Finally, defendants argue that North Star has failed to properly allege the invidious discrimination necessary to stating an equal protection claim.

#### i. Procedural Due Process

As noted above, North Star's procedural due process claim argues that it was denied its contractual property right to payment and its liberty right to its good reputation without due process of law. As noted above, defendants argue that this claim is insufficient on the grounds that no constitutionally protected rights have been identified and, even if such rights are alleged, North Star has or will be able to receive all of the process that it is constitutionally due by resorting to a State Court breach of contract action.

The Fourteenth Amendment to the United States Constitution protects individuals against the deprivation of Constitutional rights without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1980). The Constitutional requirement of due process does not always translate into the entitlement to a full-blown predeprivation hearing, complete with every procedural safeguard available. Instead, procedural due process is a flexible concept that grants an aggrieved party the right to " 'some form hearing.' " *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1981) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 570–71 n. 8, 92 S.Ct. 2701, 2705–06 n. 8, 33 L.Ed.2d 548 (1972)). Although

such a hearing must take place "at a meaningful time and in a meaningful manner," these requirements do not always dictate that a predeprivation hearing be afforded. *Parratt*, 451 U.S. at 540, 101 S.Ct. at 1915 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). Deciding the nature and timing of a hearing that satisfies due process requires consideration of:

> (1) the nature of the private and state interests involved;
>
> (2) the extent of the risk that without a hearing the plaintiff might erroneously be deprived of property and the value of a prompt hearing as a safeguard against that risk;
>
> (3) whether the state has a reasonable opportunity to provide a hearing before the deprivation occurs; and
>
> (4) the extent of the administrative burden on the state of being required to provide a formal rather than an informal hearing.

*Signet Construction Corp. v. Borg*, 775 F.2d 486, 491 (2d Cir.1985). Consideration of these factors leads the Court to conclude that a state court action for breach of contract provides North Star with all of the process that is due under federal constitutional principles. The nature of the private interests involved—the contractual right to payment on a construction project and the alleged damage to North Star's reputation that followed its termination by the Railroad—are not so compelling as to require a predeprivation hearing. *See Signet*, 775 F.2d at 491 (the right to payments due under a construction contract is not so important as to require a predeprivation hearing).

Nor do the risks associated with an erroneous deprivation require such a predeprivation hearing. This case is a far cry from cases where the deprivation could result in consequences so serious as the wrongful termination of the right to receive public assistance. *See Goldberg v. Kelly*, 397 U.S. 254, 266–67, 90 S.Ct. 1011, 1019–20, 25 L.Ed.2d 287 (1970) (hearing required prior to termination of public assistance payments).

In the Court's view, this case does not even approach the seriousness of a case like *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) where the Supreme Court held that the possibility of an erroneous termination of disability benefits did *not* require a predeprivation hearing. *See Matthews*, 424 U.S. at 340, 96 S.Ct. at 905. Here, the erroneous deprivation will not result in the deprivation of "the very means by which to live" while awaiting the outcome of a hearing. *Matthews*, 424 U.S. at 340, 96 S.Ct. at 905 (quoting *Goldberg*, 397 U.S. at 264, 90 S.Ct. at 1018). On the contrary, the withholding of payments on a multimillion dollar construction contract is precisely the type of deprivation that can await the outcome of a post-deprivation hearing. Finally, the Court notes that imposing the requirement of a pre-termination hearing every time a state actor wishes to end a contractual relationship would delay work on public contracts and place an undue burden on the state.

▆ Under these circumstances, the Court concludes that no predeprivation hearing need have been afforded North Star. Instead, the Court holds that all of the process that is constitutionally due North Star is available in a state court breach of contract action. In the context of such an action the Railroad has waived its immunity, *see* N.Y.Pub.Auth.L. Section 1275 (McKinney 1982), and may be sued for all monies due as a result of North Star's allegedly wrongful termination. In addition, the state court has the power to grant equitable relief that can help restore the alleged damage to North Star's reputation.

Finally, the Court notes that the holding here is not meant to impose an exhaustion of state remedies requirement in violation of the holding in *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). Nor is it held that the state court action constitutes an adequate state post-deprivation remedy in the case of "random" or "unauthorized" acts within the meaning of cases like *Parratt* and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In-

stead, the Court holds only that procedures are in place that provide North Star with all of the process that is due. In view of this holding, it is unnecessary to rule upon the issue of whether North Star has adequately alleged constitutionally protected interests. Even as such rights have been alleged, and this is by no means a foregone conclusion, *see S & D Maintenance Co., Inc. v. Goldin,* 844 F.2d 962, 963–64 (2d Cir.1988) (contractual relationship with New York City held not to establish a constitutionally protected property right), North Star has not shown that it has been deprived of these rights without due process of law. Accordingly, North Star's procedural due process claims are dismissed.

### ii. Substantive Due Process

North Star alleges that its termination by the Railroad amounts to "the intentional use of the LIRR's power in an arbitrary and capricious fashion for the oppression of North Star." According to North Star, it is just this type of "outrageous conduct" that violates its substantive due process rights. Defendants argue that North Star has not alleged the oppressive governmental conduct that violates substantive due process. This Court agrees.

 "The doctrine of substantive due process protects the individual against certain governmental actions 'regardless of the procedures used to implement them....'" *McClary v. O'Hare,* 786 F.2d 83, 88 (2d Cir.1986). A substantive due process right is implicated when the government uses its power to oppress an individual. Thus, cases permitting recovery on a substantive due process ground usually involve injury to a person, such as a prison inmate, who is wholly within the State's control and is therefore subject to an abuse of the government's power over him. *McClary,* 786 F.2d at 88.

 Such a scenario is readily distinguishable from a case where an individual is harmed as a result of *any* government act or failure to act. Substantive due process rights are violated only when "government conduct is 'sufficiently severe, sufficiently disproportionate to the need presented and so deliberate and unjustified

a misuse of [authority] as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights.'" *Id.* (citation omitted). A substantive due process right is not implicated, on the other hand, where the only tie the government has to the case is the fact that it is one of the parties.

 In the Court's view, the facts alleged by North Star fall far short of the kind of governmental abuse of process that is necessary to the stating of a substantive due process claim. North Star was never subject to the type of control that is typically present in the substantive due process cases and there is no sign of the deliberate and unjustified abuse of governmental authority that would turn North Star's claim into one of constitutional dimension. Accordingly, North Star's substantive due process claim is dismissed.

### iii. Equal Protection

North Star claims that because it was terminated "for cause" instead of "for convenience," it has been subject to a classification that violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. Defendants argue that North Star has not alleged the type of invidious discrimination that states an equal protection claim. This Court agrees.

 The equal protection clause prohibits the state from treating classes of people differently where that difference in treatment is based upon invidious discrimination that is unrelated to a stated objective. *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1972); *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–254, 30 L.Ed.2d 225 (1971). Here, North Star has not identified the class to which it belongs that is allegedly receiving disparate treatment. Instead, it has argued that the Railroad's designation of North Star as a contractor that has been terminated "for cause" places it in a category that violates its equal protection rights. Since North Star has not alleged that it was treated

differently or terminated because it was a member of a certain class, the Court fails to understand how North Star's equal protection rights could possibly have been violated. Under these circumstances, the Court dismisses North Star's equal protection claim.

## CONCLUSION

North Star has properly alleged facts to support claims pursuant to Section 1962(a), (c) and (d) of RICO. Those claims may not be pursued against the Railroad, however, because it is a public authority that may not be held liable for a RICO violation. The remaining RICO claims may proceed to trial. All of North Star's civil rights claims are dismissed. Since no federal claims remain against the Railroad, this Court lacks jurisdiction to decide the state law claims alleged against the LIRR. *See Finley v. United States*, — U.S. —, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989) (rejecting doctrine of pendent party jurisdiction). Accordingly, all claims against the Railroad are dismissed.

SO ORDERED.